KARIN M. COGBILL, Bar No. 244606
kcogbill@hopkinscarley.com
MICHAEL W. M. MANOUKIAN, Bar No. 308121
mmanoukian@hopkinscarley.com
HOPKINS & CARLEY
A Law Corporation
The Letitia Building
70 S First Street
San Jose, CA 95113-2406

THEODORE A. SCHROEDER, PA Bar No. 80559
*pro hac vice*
LITTLER MENDELSON, P.C.
625 Liberty Avenue
26th Floor
Pittsburgh, PA 15222
Telephone: 412.201.7600
Fax No.:     412.456.2377

RACHAEL LAVI, Bar No. 294443
LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
Telephone: 310.553.0308
Facsimile:  310.553.5583

Attorneys for Defendant
PPG ARCHITECTURAL FINISHES, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WALLEN PLAINTIFF,<br><br>          Plaintiff,<br><br>v.<br><br>PPG ARCHITECTURAL FINISHES, INC.,<br><br>          Defendant. | Case No. 8:18-CV-00705-JVS-JPR<br><br>**DEFENDANT PPG ARCHITECTURAL FINISHES, INC.'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE MOTION FOR SUMMARY ADJUDICATION**<br><br>**Judge:**       **Hon. James V. Selna**<br>**Hearing Date: November 7, 2022**<br>**Time:**      **1:30 p.m.**<br>**Courtroom:**  **10C** |

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ REDWOOD CITY

4891-3715-6656.9

DEFENDANT PPG ARCHITECTURAL FINISHES, INC.'S REPLY ISO MOT. FOR SUMM. JUDGMENT, OR IN THE ALTERNATIVE MOTION FOR SUMMARY ADJUDICATION

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................................. 1

II.   LEGAL ANALYSIS ......................................................................................... 2

   A.   Plaintiff has failed to establish that any alleged protected activity was a contributing factor in PPG's decision to terminate his employment ............................................................................... 3

      1.   Plaintiff's evidence is insufficient to establish a decision maker had knowledge of his alleged protected activity ............. 4

      2.   Plaintiff has not met his burden of establishing any protected activity was a contributing factor in PPG's decision to terminate his employment ....................................... 6

   B.   PPG has established by clear and convincing evidence it would have terminated Plaintiff's employment for legitimate, independent reasons .................................................................. 8

      1.   It is undisputed that Plaintiff failed to meet his monthly sales goals starting in 2016, and continuing through to his termination ............................................................................. 8

      2.   It is undisputed that Plaintiff failed to achieve "Successful" scores on five consecutive Market Walks .......... 11

      3.   Plaintiff admits his Training Rosters contained Inaccuracies ...................................................................... 13

   C.   Plaintiff's claim for punitive damages fails because Plaintiff cannot show by clear and convincing evidence that an officer, director, or managing agent acted with fraud, malice or oppression ......................................................................... 14

III.  CONCLUSION ............................................................................................. 15

Hopkins & Carley
ATTORNEYS AT LAW
SAN JOSE ♦ REDWOOD CITY

- i -
DEFENDANT PPG ARCHITECTURAL FINISHES, INC.'S REPLY ISO MOT. FOR SUMM. JUDGMENT, OR IN THE ALTERNATIVE MOTION FOR SUMMARY ADJUDICATION

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Basich v. Allstate Ins.*,
    87 Cal. App. 4th 1112 (2001) ..................................................................... 14

*Bradley v. Harcourt, Brace & Co.*,
    104 F.3d 267 (9th Cir.1996) ..................................................................... 10

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ............................................................................ 3, 8

*Cohen v. Fred Meyer, 23 Inc.*,
    686 F.2d 793, 796 (9th Cir.1982) ................................................................. 4

*Cruz v. HomeBase*,
    83 Cal. App. 4th 160 (2000) ...................................................................... 15

*Forsberg v. Pac. Nw. Bell Tel. Co.*,
    840 F.2d 1409 (9th Cir. 1988) ..................................................................... 1

*Kelly-Zurian v. Wohl Shoe Co.*,
    22 Cal. App. 4th 397 (1994) ...................................................................... 15

*Mock v. Mich. Millers Mut. Ins.*,
    4 Cal. App. 4th 306 (1992) .................................................................... 14, 15

*Morgan v. Regents of University of California*,
    88 Cal.App.4th 52 (2000) ......................................................................... 4

*Orr v. Bank of Amer.*,
    285 F.3d 764 (9th Cir. 2002) .................................................................... 3, 4

*Pavone v. Citicorp*,
    60 F.Supp.2d 1040 (S.D.Cal. 1997) ............................................................... 4

*R.W. Beck & Assocs. v. City & Borough of Sitka*,
    27 F.3d 1475 (9th Cir.1994) ....................................................................... 1

*S.A. Empresa de Vioacao Aerea Rio Grandense v. Walter Kidde & Co.*,
    690 F.2d 1235 (9th Cir. 1982) ..................................................................... 4

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ REDWOOD CITY

DEFENDANT PPG ARCHITECTURAL FINISHES, INC.'S REPLY ISO MOT. FOR SUMM. JUDGMENT, OR
IN THE ALTERNATIVE MOTION FOR SUMMARY ADJUDICATION

1

2

# TABLE OF AUTHORITIES
### (continued)

**Page**

3

4

*Sangster v. Paetkau,*
    68 Cal.App.4th 151 (1998)......................................................... 12

5

6

*Southern Cal. Gas Co. v. City of Santa Ana,*
    336 F.3d 885 (9th Cir. 2003) ........................................................ 4

7

8

*Villiarimo v. Aloha Island Air, Inc.,*
    281 F.3d 1054 (9th Cir. 2002).................................................. 8, 9

9

*White v. Home Depot U.S.A.,*
    2019 WL 1171163 (S.D. Cal. 2019) .......................................... 10

10

11

*White v. Ultramar,*
    21 Cal.4th 563 (1999)........................................................... 14, 15

12

13

*Yartzoff v. Thomas,*
    809 F.2d 1371 (9th Cir. 1987) ..................................................... 4

14

**Statutes**

15

Cal. Civ. Code § 3294............................................................... 14, 15

16

17

Labor Code §1102.5(b)..................................................................... 3

18

**Other Authorities**

19

Fed.R.Civ.P 56(c)(1)(A) ................................................................. 4

20

21

22

23

24

25

26

27

28

Hopkins & Carley
Attorneys At Law
San Jose ◆Redwood City

DEFENDANT PPG ARCHITECTURAL FINISHES, INC.'S REPLY ISO MOT. FOR SUMM. JUDGMENT, OR
IN THE ALTERNATIVE MOTION FOR SUMMARY ADJUDICATION

## I.    INTRODUCTION

Plaintiff Wallen Lawson's <u>forty-three</u> page Opposition fails to create a genuine issue of material fact for three reasons: (1) it is largely devoid of citations to *any evidence*; (2) where evidence is cited, more often than not, the cited evidence is either unsupportive of the fact asserted, or a mischaracterization of the cited evidence; and (3) Plaintiff unpersuasively argues the Court should focus on what a "reasonable jury might conclude" based on speculation and conjecture. Simply put, "[t]he district judge is not required to comb the record to find some reason to deny a motion for summary judgment." *Forsberg v. Pac. Nw. Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988);  ("Arguments based on conjecture or speculation are insufficient..." *R.W. Beck & Assocs. v. City & Borough of Sitka,* 27 F.3d 1475, 1480 n. 4 (9th Cir.1994).)

Plaintiff's Opposition repeatedly makes a critical admission that undermines his ability to establish that any protected activity was a contributing factor in PPG's decision to terminate his employment. Namely, as Plaintiff admits no less than seven times, long before Plaintiff ever engaged in any alleged protected activity, Moore was, according to Plaintiff, grading his Market Walks unfairly and setting him up for failure by realigning his territory. *See e.g.*, Opp., 5:5-9, 5:22-6:6, 7:8-15, 9:1-8, 22:16-21 UMFs, 12, 78. After Moore allegedly should have surmised the existence of an ethics complaint *and* that it was made by Lawson, Lawson actually received a slightly improved Market Walk score from Moore. Indeed, the only adverse employment action that occurred *after* Lawson engaged in protected activity was the result of Lawson's own failure to meet the PIP's requirements. Notably, Lawson does not contend he ever met PPG's expectations. Instead, he argues either PPG's expectations are unreasonable, or without any comparator evidence, they were inconsistently applied.

Although that alone should be enough, also fatal to Plaintiff's claims, is that his poor performance started in April 2016, i.e., *more than eight months before* Moore, the alleged bad actor, started managing him, and almost *one full year before*

4891-3715-6656.9
DEFENDANT PPG ARCHITECTURAL FINISHES, INC.'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE MOTION FOR SUMMARY ADJUDICATION

Plaintiff made his first anonymous complaint:

- April 2016: Plaintiff misses his sales goal
- June 2016: Plaintiff misses his sales goal
- October 2016: Plaintiff misses his sales goal
- November 2016: Plaintiff misses his sales goal
- December 2016: Plaintiff scored 60/100 (Marginal) on his Market Walk
- December 2016: Plaintiff misses his sales goal
- January 2017: Plaintiff misses his sales goal
- February 2017: Plaintiff misses his sales goal
- March 2017: Plaintiff scored 58/1100 (Unsuccessful) on his Market Walk
- March 2017: Plaintiff misses his sales goal
- Mid-April 2017: Mayhew and Moore discuss placing Plaintiff on a PIP
- April 21, 2017: Plaintiff scored 46/100 (Unsuccessful) on his Market Walk, and discusses with Moore his failing performance.

Plaintiff's failure to meet PPG's legitimate expectations of his job continued throughout 2017, and it is undisputed that after Plaintiff was placed on a PIP in May 2017, he continued to miss his monthly sales goals and failed to score a "Successful" rating on two consecutive Market Walks. Simply put,  aside from the absence of evidence regarding the decision maker's lack of knowledge of Plaintiff's protected activity, there is no doubt that the evidence clearly establishes that PPG would have terminated Plaintiff's employment for legitimate, independent reasons even if he had not engaged in protected activity since that is precisely what happened. As such, summary judgement should be granted.

## II.    LEGAL ANALYSIS

Contrary to Plaintiff's assertions otherwise, the outcome of this motion, on the record before this Court, was not decided by the Ninth Circuit. To the extent the Ninth Circuit expressed any sentiments about summary judgment, those were done *before* the California Supreme Court had opined, and before the parties and the Ninth

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ REDWOOD CITY

4891-3715-6656.9                                                    - 2 -
DEFENDANT PPG ARCHITECTURAL FINISHES, INC.'S REPLY ISO MOT. FOR SUMM. JUDGMENT, OR
IN THE ALTERNATIVE MOTION FOR SUMMARY ADJUDICATION

Circuit knew which evidentiary standard to apply to a claim under Section 1102.5. Importantly, after the California Supreme Court's decision in *Lawson*, the Ninth Circuit vacated and remanded this case "to the district court for it to apply the correct framework, as set forth in the California Supreme Court's opinion, **in the first instance.**" Memorandum dated February 9, 2022, Case No. 19-55802, Dkt. 65-1 (emphasis added). As the Ninth Circuit noted, this Court "must reevaluate the evidence based on a different legal standard." *Id*. at fn. 1. Thus, there is no presumption in Plaintiff's favor or directive from the Ninth Circuit to deny PPG's motion for summary judgment, and Plaintiff must affirmatively present specific admissible evidence that creates a genuine issue of material fact for trial. Plaintiff has failed to do so. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

A.    **Plaintiff has failed to establish that any alleged protected activity was a contributing factor in PPG's decision to terminate his employment.**

There is no dispute Plaintiff bears the burden of establishing his alleged protected activity was a contributing factor in PPG's decision to terminate his employment. Irrespective of whether the protected activity is Lawson's alleged comments to Moore about his alleged refusal to engage in mis-tinting, or his ethics complaints, Lawson cannot meet his burden of proof.

Insofar as Plaintiff's claim is premised on the anonymous complaints to PPG's ethics hotline pursuant to Labor Code 1102.5(b), it fails because it is undisputed the decision makers– Moore, Mayhew, and Kacsir – had no knowledge Plaintiff submitted any anonymous complaint until *after* he filed this lawsuit. UMF, 77. Plaintiff's response to UMF 77 is indicative of his Opposition as a whole, i.e., that Plaintiff has no evidence to create *any* genuine dispute of a material fact. [1] More specifically, in response to PPG's Separate Statement, Plaintiff's asserts UMF, 77 is "Disputed" and instead of citing to any evidence, he interjects argument to try and

---

[1] PPG objects to the Horowitz Decl., Exhibits B, C, F, G, H, I, L, S, U, V, W as they have not been authenticated, and are inadmissible. *See Orr v. Bank of Amer.*, 285 F.3d 764, 773 (9th Cir. 2002)

4891-3715-6656.9                                                    - 3 -

DEFENDANT PPG ARCHITECTURAL FINISHES, INC.'S REPLY ISO MOT. FOR SUMM. JUDGMENT, OR
IN THE ALTERNATIVE MOTION FOR SUMMARY ADJUDICATION

manufacture a dispute on paper.[2] In fact, there are at least 24 material facts that Plaintiff states are "Disputed", yet he provides no evidence in support. *See*, e.g., UMFs, 5, 12, 16, 18, 23, 29, 34, 37, 39, 44, 47, 49, 50, 51, 59, 63, 64, 67, 68, 70, 73, 73, 77, 82, 83. *See*, *S.A. Empresa de Vioacao Aerea Rio Grandense v. Walter Kidde & Co.*, 690 F.2d 1235, 1238 (9th Cir. 1982) ("a party cannot manufacture a genuine issue of material fact merely by making assertions in its legal memoranda"), *Southern Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003) (party opposing summary judgment must direct the court's attention to specific, triable facts, general references without page or line numbers are not sufficiently specific); Fed.R.Civ.P 56(c)(1)(A) (a party asserting that a fact is genuinely disputed must support the assertion by "citing to particular parts of materials in the record").

With no direct evidence that a decision maker was aware he submitted an anonymous complaint, Plaintiff must rely on unsupported speculation and conjecture, which is insufficient to create a genuine issue of material fact. *See Yartzoff v. Thomas,* 809 F.2d 1371, 1376 (9th Cir. 1987)("causation…may be inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities"); *Morgan v. Regents of University of California,* 88 Cal.App.4th 52, 69-70 (2000) (**"Essential to a causal link is evidence that the employer was aware that the plaintiff had engaged in the protected activity."** (quoting *Cohen v. Fred Meyer, 23 Inc.,* 686 F.2d 793, 796 (9th Cir.1982) (emphasis added.)).

### 1. Plaintiff's evidence is insufficient to establish a decision maker had knowledge of his alleged protected activity.

First, notwithstanding the fact that Duffy was not a decision maker, Plaintiff argues, "Duffy obviously learned [Plaintiff's] identity when he left a voice mail for [Plaintiff] and heard Lawson's voice mail greeting". Opp., at 15, fn. 13. Even if this assumption could be made, there is *no evidence* Duffy shared that information with

---

[2] PPG objects to Horowitz Declaration, Exhs. A, J, K, N, O, Q, R, T, and AA on the grounds Plaintiff failed to provide reporter certifications; thus, they lack authentication and personal knowledge. *See Orr*, 285 F.3d at 774; *Pavone v. Citicorp*, 60 F.Supp.2d 1040, 1045 (S.D.Cal. 1997)

anyone, including, Minda, Dalton, Moore, Mayhew, or Kacsir. UMFs 51, 60-61, 77.[3] In fact, the undisputed evidence shows that after that phone call, Duffy did not know he was speaking to Plaintiff (UMF 50), and Duffy refers to the person he spoke with only as "the reporter" and "the caller," stating "**The reporter did not provide a name – since they were still concerned about remaining anonymous...**" UMF, 51.

Second, Plaintiff asserts, "a reasonable jury could conclude that Moore deduced that Lawson was the whistleblower as a result of Lawson's vehement objections to the mis-tinting practice." Opp., at 3:16-18. The flaw in this assertion as it relates to Moore's alleged knowledge that Lawson reported him to PPG is the lack of *any* evidence to support the contentions Moore knew about the April 2017 and June 2017 complaints in the first instance. Indeed, both Dalton and Moore testified that when Dalton met with Moore to discuss questions about the mis-tinting practice, Dalton told Moore the investigation was initiated to review expense-out products. UMFs, 52, 53. The evidence is undisputed that Dalton *never* revealed to Moore that an anonymous complaint had been filed. *Id*. It is unreasonable to infer that Moore had knowledge that Plaintiff made either anonymous report, when it is undisputed that Moore did not know about the reports in the first place.

Unable to pin any knowledge of the anonymous complaints on Moore, Mayhew or Kacsir, Lawson shifts his focus to his alleged opposition to Moore in order to try to state a claim under Section 1102.5(c). This is equally unavailing. First, Lawson's testimony about his alleged opposition to Moore is itself contradictory and questionable. There are no facts in the Second Amended Complaint alleging any statements directly to Moore. Lawson claims that at some point in the week after

---

[3] Plaintiff's citations to Duffy's testimony highlight blatant mischaracterization of evidence. At deposition, Duffy was *hypothetically* asked if he would have terminated Moore if Moore engaged in unethical behavior while reporting to Duffy; Duffy said he would. Duffy did not testify, "Moore, not Lawson, should have been the one that the company fired." Opp., 19:12-15. Duffy's testimony does not confirm he knew Plaintiff made an anonymous report, or that Moore retaliated against Plaintiff for *any* reason. Moreover, Moore and Lawson are not comparators, and the undisputed fact remains Lawson was terminated for performance reasons.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ REDWOOD CITY

4891-3715-6656.9                                    - 5 -
DEFENDANT PPG ARCHITECTURAL FINISHES, INC.'S REPLY ISO MOT. FOR SUMM. JUDGMENT, OR
IN THE ALTERNATIVE MOTION FOR SUMMARY ADJUDICATION

1  April 18, 2017, "he spoke by phone with Moore, who resided in Phoenix and was
2  rarely physically present in Lawson's territory in California," (Opp. at 12:10-13) all
3  while ignoring the fact that Lawson had been physically with Moore for a multi-day
4  Market Walk that concluded on April 21, 2017 (Lawson Depo., 69:11-70:17, Exh.
5  9), including on the same day Lawson made his first anonymous complaint. Lawson
6  unequivocally admits he wanted his April 21, 2017, complaint to be anonymous
7  (UMF 34), yet now wants this Court to believe that the very next week he
8  "vociferously" objected directly to Moore, but then two months later, went back to
9  wanting to remain anonymous.

10  In its totality, the evidence does not create a genuine dispute that the decision
11  makers were aware of Lawson's alleged protected activity.

12
13  **2.   Plaintiff has not met his burden of establishing any protected
activity was a contributing factor in PPG's decision to
terminate his employment.**

14  Even if Lawson could prove that Moore, or any other decision maker, was
15  aware of protected activity, Lawson still cannot show the protected activity was a
16  contributing factor in the termination decision. This is true for several reasons.

17  First, Lawson had a long pattern of performance issues predating any alleged
18  protected activity. Lawson had missed his monthly sales numbers eight times
19  between April 2016 and April 2017. UMF 18. Lawson had scored poorly on the
20  December 2016, March 2017, and April 2017 markets walks. UMF 11, 14, 23. After
21  the March 2017 Market Walk, Plaintiff received a verbal warning. UMF 15. Moore
22  and Mayhew discussed placing Lawson on a performance improvement plan. UMFs
23  19, 20. Moore discussed with Lawson his concerns about his performance at the time
24  of the April 2017 Market Walk. UMF 24. From that point forward, it is only
25  Lawson's inability to meet the expectations of his PIP that leads to his termination.

26  Second, after the alleged protected activity, Plaintiff gets his highest score yet
27  on a Market Walk with Moore. From this, his PIP is extended (which he now says
28  was only done by Moore so that Moore could sabotage another Market Walk to

DEFENDANT PPG ARCHITECTURAL FINISHES, INC.'S REPLY ISO MOT. FOR SUMM. JUDGMENT, OR
IN THE ALTERNATIVE MOTION FOR SUMMARY ADJUDICATION

1  justify a termination). But, hypothetically speaking, if Moore were intentionally

2  retaliating against Plaintiff for engaging in protected activity, logic dictates Moore

3  would have terminated Plaintiff's employment in July 2017 when his Market Walk

4  failed to achieve a required "Successful" rating. Rather, Moore *extended* the PIP, and

5  provided Plaintiff with additional time, and an additional Market Walk to get back

6  on track. UMF, 67. Plaintiff failed to improve, and so he was terminated.

7      Curiously, Lawson alleges that as early as the December 2016 Market Walk,

8  Moore's critique of Lawson's performance is suspect (i.e., Lawson argues Moore

9  was unfairly scoring and critiquing his performance on Market Walks more than five

10  months before any alleged protected activity). *See* Plaintiff's Response to UMFs 16

11  and 23; Opp. at 5:5-9 (Moore scored Lawson's Market Walk**s**…in an anomalous

12  manner inconsistent with company policies in order to generate a low score to justify

13  firing Lawson.); Opp. at 7:8-15 (accusing Moore of arbitrarily targeting Lawson for

14  low scores, and arguing a jury could conclude the decline in scores was caused by

15  Moore's retaliatory animus, ignoring that the first Market Walk after any protected

16  activity was the <u>highest</u> score Lawson received on a Market Walk with Moore). In

17  making this argument, Plaintiff seemingly forgot that in his SAC, he alleged, "Moore

18  proceeded to unfairly score Plaintiff's  Market Walk evaluations in order to give him

19  failing scores, **starting with Plaintiff's July 13, 2017  Market Walk.**" SAC, Dkt.

20  37, ¶ 17 (emphasis added). Moreover, Plaintiff alleges, "Moore engaged in the same

21  practice with Plaintiff's final Market Walk in late-August 2017." *Id.* As such,

22  Plaintiff's original allegations in this case were that the first Market Walk he believes

23  Moore unfairly scored was in July 2017, followed by the final August 2017 Market

24  Walk. Since this cannot be rectified with the fact that the July 2017 Market Walk was

25  his highest score under Moore, Plaintiff now contends all of his Market Walks under

26  Moore were unfairly scored. Under this new argument, however, Plaintiff cannot

27  show his protected activity was a contributing factor to his termination because,

28  according to Lawson, Moore was unfairly scoring his Market Walks well before he

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ REDWOOD CITY

4891-3715-6656.9                                - 7 -
DEFENDANT PPG ARCHITECTURAL FINISHES, INC.'S REPLY ISO MOT. FOR SUMM. JUDGMENT, OR
IN THE ALTERNATIVE MOTION FOR SUMMARY ADJUDICATION

ever engaged in protected activity.

Also fatal to Lawson's ability to establish his burden of proof is his argument that Moore sabotaged his sales numbers by realigning his territory. Although Lawson fails to state when the realignment allegedly occurred, for the realignment to be the justification why he missed his sales goals, it must have occurred immediately after Moore took over the region in January 2017 since Lawson has offered no other excuse for missing his sales goals in January 2017, February 2017, March 2017, April 2017, May 2017 and June 2017. Based on that timeline, the "unfair" realignment occurred *before* any protected activity, and further undermines Lawson's argument his later protected activity was a contributing factor to the decision to terminate him.

In sum, Plaintiff's inability to accept his performance deficiencies, which long predated any protected activity and carried through to his termination, highlights why the evidence before this Court has not created a genuine issue of material fact.[4]

### B. PPG has established by clear and convincing evidence it would have terminated Plaintiff's employment for legitimate, independent reasons.

Throughout his opposition, Plaintiff repeatedly argues what a "reasonable jury could conclude." However, Plaintiff's argument is a red herring because at this stage, Plaintiff must affirmatively present specific admissible evidence sufficient to create a genuine issue of material fact for trial. *Celotex Corp.*, 477 U.S. at 324. Assuming, *arguendo*, Plaintiff could establish he was retaliated against because he engaged in protected activity (which he cannot do as set forth above), the evidence overwhelmingly establishes that PPG would have terminated Plaintiff's employment for legitimate, independent reasons even if he had not engaged in protected activity.

### 1. It is undisputed that Plaintiff failed to meet his monthly sales goals starting in 2016, and continuing through to his termination.

First, Plaintiff does not dispute he only met his monthly sales goals four times

---

[4] PPG objects to ¶ 17 of the Lawson Decl. as he lacks personal knowledge of the facts asserted, and it is improper expert opinion. *Villiarimo*, 281 F.3d at 1059 & fn.5, 1061.

DEFENDANT PPG ARCHITECTURAL FINISHES, INC.'S REPLY ISO MOT. FOR SUMM. JUDGMENT, OR IN THE ALTERNATIVE MOTION FOR SUMMARY ADJUDICATION

between April 2016 and March 2017, and he continued to miss them in April 2017, May 2017, and June 2017. For four of the eight misses prior to April 2017, Plaintiff's supervisor was Paul Stanton, not Moore. This evidence emphasizes and confirms Plaintiff's performance issues started long before - i.e., 8 months before - Moore began managing Plaintiff. To minimize the significance of missing his sales goals, Plaintiff argues his failure was due to a territory realignment orchestrated by Moore which "greatly affected Plaintiff's sales metrics, and Moore opportunistically used the resultant lowered sales numbers as justification for [Plaintiff's] PIP and firing." Opp. at 22:16-21. Plaintiff's baseless assertion is unsupported by the record, as his historical failure to meet his monthly sales goals, which started prior to Moore, completely undercuts his credibility, and his assertions Moore realigned Plaintiff's territory to intentionally negatively impact his sales numbers.[5]

What is more, Plaintiff provides no evidence (because none exists) that Moore even had authority, input, or discretion over the decisions associated with the realignment. Notably, Plaintiff fails to state when the realignment occurred in relation to his struggling performance, and, although Plaintiff attributes the realignment to Moore, Moore did not assume responsibility for Plaintiff's territory until early 2017. Moore Decl., ¶ 10. Even assuming the realignment occurred on January 1, 2017, Plaintiff already missed his sales goals for at least five months by that point: April 2016, June 2016, October 2016, November 2016, and December 2016. UMFs 17, 18. Ultimately, Plaintiff's conclusory statement he was given underperforming stores lacks foundation, as he provides no *evidence* of when or why the stores underperformed and/or later closed. Nor can it excuse his poor performance, because sales goals are set based on the performance *at that store* in the prior year. UMF 4.[6]

---

[5] Plaintiff offers only his self-serving declaration about the alleged reassignment; his declaration lacks evidentiary support, and does not create a genuine issue of fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002).

[6] Although Plaintiff contends UMF 4 is "Disputed", there is no evidence why or when any store in his territory closed, nor is there evidence "Moore removed Plaintiff's top-performing stores from

DEFENDANT PPG ARCHITECTURAL FINISHES, INC.'S REPLY ISO MOT. FOR SUMM. JUDGMENT, OR IN THE ALTERNATIVE MOTION FOR SUMMARY ADJUDICATION

Second, Lawson claims he "missed the alleged goals by only a thin margin." Opp., at 23:11. Plaintiff's opinion that his misses were small is irrelevant. *See Bradley v. Harcourt, Brace & Co.,* 104 F.3d 267, 270 (9th Cir.1996) ("an employee's subjective personal judgments of [their] competence alone do not raise a genuine issue of material fact"). PPG, not Plaintiff, determines the essential duties of the job and the weight given those duties. *White v. Home Depot U.S.A.*, 2019 WL 1171163 at * 12 (S.D. Cal. 2019) (Courts is not a super-personnel department to reexamine an entity's business decision).

Third, throughout his opposition Plaintiff tries to downplay the sales side of his job, going so far as to call it a "'fallacy' that TMs 'sell' product in the store." Plaintiff also contends TMs "were in practice retail merchandizing clerks who had little ability to influence the sales of PPG products in a particular store." *See* Plaintiff's Response to UMFs 17, 18, 63. Plaintiff's self-serving statement is contradicted by Plaintiff's own prior statements at the time he was employed by PPG. In his 2016 evaluation, Plaintiff noted that he would "develop a blueprint to make [selling product in his territory] happen & **achieve this important goal**." (emphasis added.) Lawson Decl., ¶ 9, Exh. A. Likewise, Plaintiff also noted that he "did not attain goal struggled in my market **selling** Rescue It line of products." (emphasis added.) *Id.* These were Plaintiff's contemporaneous words in 2016, not his attorneys' argument in an effort to defeat summary judgment.

Fourth, despite the fact Plaintiff had several years to conduct the appropriate discovery needed to prove PPG unfairly calculated Plaintiff's sales numbers in comparison to other TMs, or that stores assigned to him when his territory was allegedly realigned caused his misses, or that Moore gave the stores to him to intentionally negatively impact his sales numbers, Plaintiff has failed to do so. This lack of evidence is fatal to Plaintiff's attempts to undermine the clear and convincing

---

his territory and replaced them with failing stores."

Hopkins & Carley
Attorneys At Law
San Jose ♦Redwood City

DEFENDANT PPG ARCHITECTURAL FINISHES, INC.'S REPLY ISO MOT. FOR SUMM. JUDGMENT, OR IN THE ALTERNATIVE MOTION FOR SUMMARY ADJUDICATION

1  evidence that PPG prioritized sales goals, that PPG was warranted in placing Plaintiff
2  on a PIP in part because of his missed sales goals, and that PPG would (and did)
3  terminate him because he failed to meet the PIP goals, including his sales goals.

**2.    It is undisputed that Plaintiff failed to achieve "Successful" scores on five consecutive Market Walks.**

6    Besides missing his monthly sales goals in eight out of twelve straight months
7  before he was placed on a PIP, and for another three consecutive months thereafter,
8  the evidence is undisputed that Plaintiff failed to achieve a "Successful" score on five
9  consecutive Market Walks. Notably, the final Market Walk in August was only 6
10  points lower than the April 2017 Market Walk; yet Lawson ignores that fact because
11  as of the April 2017 Market Walk, he had not engaged in any protected activity.

12    Moore's critique of Lawson's performance on Market Walks is thoroughly
13  documented and dates back to December 2016. As early as December 2016,
14  Plaintiff's Market Walks demonstrate he struggled with: (1) keeping his Training
15  Roster up to date; (2) developing relationships with key employees at the stores in
16  his territory; and (3) placing product in required areas in the stores in his territory.
17  UMF 12. Plaintiff's 2016 Performance Review demonstrates that these concerns –
18  and others – were present and known to Plaintiff by February 2017; i.e., two months
19  *before* he was placed on his PIP. Lawson Decl., ¶ 9, Exh. A. (noting in self-comments
20  he was behind on training and some stores were missing training); (acknowledging
21  he did not complete the daily store check list every visit), and (noting he did not
22  complete required monthly email communications, did not conduct monthly Store
23  Manager/ASM review meetings, and was behind on quarterly PSI meetings.)

24    Indeed, in his declaration, Plaintiff *admits* he was required to stock products,
25  visit all of his assigned stores, and conduct trainings. Lawson Decl., ¶ 7. And, as early
26  as December 2016, Plaintiff's Market Walks show he consistently had issues with
27  the specific duties he concedes he was required to perform, e.g., maintaining an up-
28  to-date Training Roster, developing relationships with key employees, and placing

DEFENDANT PPG ARCHITECTURAL FINISHES, INC.'S REPLY ISO MOT. FOR SUMM. JUDGMENT, OR
IN THE ALTERNATIVE MOTION FOR SUMMARY ADJUDICATION

1    product in required areas throughout the stores in his territory. UMF, 12.

2    To avoid the impact of his Market Walk scores, Lawson makes several

3    unconvincing arguments. First, he alleges his near passing score of 66 on his July

4    Market Walk was "not a decisive failure that would have justified termination" and

5    so "Moore extended the PIP to allow himself time to concoct Lawson's lowest score

6    ever - 40…" Opp. 31:22-28. Besides not having any evidentiary support, this

7    assertion is nonsense. Lawson was on a PIP at the time of the July 2017 Market Walk,

8    the PIP required Lawson obtain a Successful score on the Market Walk, according to

9    Lawson, Moore was aware at that point Lawson had engaged in protected activity;

10   yet, despite some allegedly retaliatory animus, Moore gave Lawson his highest rating

11   ever (knowing it was not enough to meet the PIP requirements) only to extend the

12   PIP for another month to do another Market Walk which he could score lower. While

13   a non-moving party is entitled to inferences, those inferences must be reasonable and

14   supported by the evidence. *Sangster v. Paetkau*, 68 Cal.App.4th 151, 162-63 (1998)

15   ("evidence that gives rise to no more than mere speculation cannot be regarded as

16   substantial, and is insufficient to establish a triable issue of fact."). The inferences

17   Lawson wants this Court to make require it to oscillate between Lawson's conspiracy

18   theories accepting some as true for one point, and others as true for another point.

19   Second, Plaintiff claims Moore scored his Market Walks inconsistently with

20   other TMs and/or PPG policy, yet offers no *evidence* to support his speculation.

21   Indeed, when this Court originally examined the evidence when it granted PPG's

22   motion for summary judgment, it held: 1) "**the record makes clear** Plaintiff

23   consistently performed poorly on his  Market Walks"; "Plaintiff also **fails to offer**

24   **evidence** that RSM Moore's purported deviations violated some well-established

25   company policy or practice", and that "Plaintiff offers **no evidence** that these alleged

26   'inconsistencies' or deviations impacted Plaintiff's Market Walk score in an outcome

27   determinative way". Dkt. 62, at p. 8. Similarly, Lawson argues Moore penalized

28   Lawson in his August 2017 Market Walk score because he did not engage in the mis-

4891-3715-6656.9                                      - 12 -

DEFENDANT PPG ARCHITECTURAL FINISHES, INC.'S REPLY ISO MOT. FOR SUMM. JUDGMENT, OR
IN THE ALTERNATIVE MOTION FOR SUMMARY ADJUDICATION

tinting practice. Lawson relies on a sentence in a write up that was issued to Moore and Brian Wells that instructs that "all Market Walks need to be conducted and points allocated as appropriate, you should not imply or give "points off" for not giving the store credit on old label product and/or not mis-tinting." Lawson's argument is unsupported for multiple reasons. First, there is no evidence Moore had scored Market Walks in that manner (i.e. had taken points off if a TM did not mis-tint); and, second, if that was Moore's practice, there is no evidence he applied it to Lawson at all, or inconsistent with how he scored others – including Laura Sanchez who had declared she would not mis-tint.

### 3.    Plaintiff admits his Training Rosters contained Inaccuracies.

Plaintiff also alleges, "PPG cannot prove at this stage that it would have fired Lawson for its stated reason - his Market Walk scores and purported "falsification" of his training roster – even if Lawson had not been a whistleblower." Opp., 36:3-6. Although Plaintiff adamantly denies he "falsified" his training roster, his denial is simply semantics as he admits he submitted inaccurate information and, as a result, sometimes his Training Rosters were wrong. UMF, 80. The testimony Plaintiff cites to support his contention that UMF, 80 is "Disputed" only confirms he never explicitly told to Mayhew - "I falsified documents." Regardless of the terminology, the undisputed evidence confirms the outcome is the same – Plaintiff's Training Roster contained inaccuracies. UMF, 81. Indeed, as Plaintiff admitted, his Training Roster issues date as far back as his December 2016 Market Walk, which predates any of his alleged technology issues. Lawson Decl., ¶ 9, Exh. A; *see also,* UMFs 11, 14, 23, 64, and 69. (December 2016: Training Roster "[n]eeds to update on "every visit" to ensure that all associates are accounted for and input correctly."; March 2017: Plaintiff failed to update his Training Roster on every visit with current employees, and he failed to have stores in his territory on his Training Roster at all; April 2017: Training Roster submitted shortly after the April 2017 Market Walk had inaccuracies, and it did not have all members of the paint and pro department at

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ◆REDWOOD CITY

4891-3715-6656.9

DEFENDANT PPG ARCHITECTURAL FINISHES, INC.'S REPLY ISO MOT. FOR SUMM. JUDGMENT, OR IN THE ALTERNATIVE MOTION FOR SUMMARY ADJUDICATION

Lowe's on the Training Roster; July 2017: "Training roster was missing 2 associates in the paint department in 758. We cannot get a reading of training completion if all associates are not present. Please make sure to ask associates at the end of all shifts if the roster is still the same."; August 2017: Training Roster did not reflect trainings that were allegedly completed, was missing numerous paint and pro department employees, and recorded completed trainings in stores when Lawson was not working in that particular store).

Ultimately, as the District Court previously concluded, "the PIP's very terms encompassed [Plaintiff's] overall performance as a TM, including improving [Plaintiff's] sales numbers *and* [Plaintiff's] Market Walk scores" Dkt. 62, at p. 9, (emphasis in original)), however, once on the PIP, Plaintiff continued to struggle with *both* his Market Walks *and* his sales performance. UMFs 63, 64, 69.[7]

**C.    Plaintiff's claim for punitive damages fails because Plaintiff cannot show by clear and convincing evidence that an officer, director, or managing agent acted with fraud, malice or oppression.**

Punitive damages are only available where a plaintiff can show there is clear and convincing evidence that an "officer, director, or managing agent" of the company is guilty of "oppression, fraud, or malice". Cal. Civ. Code § 3294; *Basich v. Allstate Ins.*, 87 Cal. App. 4th 1112, 1118-19 (2001); *Mock v. Mich. Millers Mut. Ins.*, 4 Cal. App. 4th 306, 332-33 (1992) (requiring "evidence be so clear as to leave no substantial doubt" and "sufficiently strong to command the unhesitating assent of every reasonable mind"). The California Supreme Court defined a managing agent as someone who "exercises substantial discretionary authority over decisions that ultimately determine corporate policy." *White v. Ultramar,* 21 Cal.4th 563, 573 (1999). "Corporate policy" is "the general principles which guide a corporation, or rules intended to be followed consistently over time in corporate operations."

---

[7] Plaintiff claims Minda (a) knew he engaged in protected activity, and (b) "failed to take steps to exercise any oversight surrounding Moore's firing of Lawson" Opp., at 25:4-9. Consistent with his Opposition, Plaintiff fails to provide any evidence Minda deviated from executing her job duties, or more critically that Plaintiff was retaliated against because he engaged in protected activity.

DEFENDANT PPG ARCHITECTURAL FINISHES, INC.'S REPLY ISO MOT. FOR SUMM. JUDGMENT, OR IN THE ALTERNATIVE MOTION FOR SUMMARY ADJUDICATION

1  *Cruz v. HomeBase*, 83 Cal. App. 4th 160, 165 (2000).

2          Summary adjudication should be granted on Plaintiff's claim for punitive

3  damages because Plaintiff fails to identify an officer, director, or managing agent that

4  acted with "oppression, fraud, or malice" toward Plaintiff. The SAC alleges only

5  actions by Mayhew and Moore. SAC, *passim*. Plaintiff has no evidence either were

6  an officer or managing director; this alone is fatal to his claim for punitive damages.

7  *See White v. Ultramar*, 21 Cal.4th 563, 577 (1999); *Cruz v. Homebase*, 83

8  Cal.App.4th 160,167-168 (2000).

9          Also, as to "oppression, fraud, or malice", despite deposing seven PPG

10  employees – Dalton, Duffy, Moore, Kacsir, Mayhew, Minda, and Cathie McKinley

11  – Plaintiff has not identified *any* evidence, let alone clear and convincing evidence,

12  that anyone at PPG acted with oppression, fraud, or malice, i.e., there is no evidence

13  of conduct by anyone at PPG that constitutes an act "so vile, base, contemptible,

14  miserable, wretched, or loathsome" so as to be "despised by ordinary decent people."

15  *Mock, supra,* 4 Cal. App. 4th at 331. As to Moore, the alleged bad actor, it is

16  undisputed that Moore harbored no ill-will towards Plaintiff. SUF, 83.

17          Furthermore, to the extent Plaintiff relies on Moore being the "bad actor"

18  whose actions allegedly warrant punitive damages, Plaintiff has failed to show that

19  Moore was a managing agent. A supervisor with "immediate and direct control" and

20  "the authority to terminate" employees does not necessarily qualify as a managing

21  agent under section 3294. *See Kelly-Zurian v. Wohl Shoe Co.*, 22 Cal. App. 4th 397,

22  422 (1994). Rather, Plaintiff must show Moore "exercise[d] substantial discretionary

23  authority over decisions that ultimately determine corporate policy". Plaintiff failed

24  to identify any such evidence as to Moore, or anyone else at PPG.

25          Accordingly, Plaintiff's claim for punitive damages fails as a matter of law.

26  **III.    CONCLUSION**

27          For the reasons stated above PPG respectfully requests that the Court grant its

28  motion for summary judgment in full.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ◆REDWOOD CITY

4891-3715-6656.9                                         - 15 -
DEFENDANT PPG ARCHITECTURAL FINISHES, INC.'S REPLY ISO MOT. FOR SUMM. JUDGMENT, OR
IN THE ALTERNATIVE MOTION FOR SUMMARY ADJUDICATION

1  Dated:  October 14, 2022

2

3                                    /s/ Karin M. Cogbill
                                     KARIN M. COGBILL
4                                    HOPKINS & CARLEY, ALC
                                     A Law Corporation
5                                    Attorneys for Defendant
                                     PPG ARCHITECTURAL FINISHES,
6                                    INC.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4891-3715-6656.9                              - 16 -
DEFENDANT PPG ARCHITECTURAL FINISHES, INC.'S REPLY ISO MOT. FOR SUMM. JUDGMENT, OR
IN THE ALTERNATIVE MOTION FOR SUMMARY ADJUDICATION