Bruce C. Fox (*pro hac vice*)
bruce.fox@obermayer.com
Andrew J. Horowitz (*pro hac vice*)
andrew.horowitz@obermayer.com
OBERMAYER REBMANN
MAXWELL & HIPPEL, LLP
525 William Penn Place, Ste. 1710
Pittsburgh, PA 15219
Tel:  (412) 566-1500
Fax:  (412) 281-1530

Chaka Okadigbo (CA State Bar No. 224547)
cokadigbo@hkm.com
HKM EMPLOYMENT ATTORNEYS LLP
700 S. Flower Street, Suite 1067
Los Angeles, California 90017
Telephone/Facsimile: (213) 431-6209

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| WALLEN LAWSON,<br><br>    Plaintiff<br><br>vs.<br><br>PPG INDUSTRIES, INC.,<br><br>    Defendant. | Case No.: 8:18-CV-00705-JVS-JPR<br><br>**PLAINTIFF'S SUR-REPLY IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>The Honorable James V. Selna<br><br>Hearing Date:  November 7, 2022<br>Time:                  1:30 p.m.<br>Courtroom:          10C |

# PLAINTIFF'S SUR-REPLY IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

PPG argues that Lawson's punitive damages claim fails because Lawson cannot point to "any officer, director, or managing agent" who acted with "oppression, fraud, or malice" ECF No. 95 at 15. PPG's argument must be rejected.

## I. Legal Standard—Cal. Civil Code § 3294

Punitive damages are available against a corporation based on the conduct of "an officer, director, or managing agent" or where a managing agent has either (a) advance knowledge of, and consciously disregards, the unfitness of an employee or (b) authorizes or ratifies wrongful conduct.[1]  Cal. Civ. Code § 3294(b). The scope of an employee's discretion and authority is "a question of fact for decision on a case-by-case basis." *King v. U.S. Bank Nat'l Ass'n*, 53 Cal. App. 5th 675, 713 (2020).

Whether an employee is an "officer, director, or managing agent" doesn't depend on their "level" within the corporate hierarchy; rather, "the critical inquiry is the degree of discretion the employees possess in making decisions that will ultimately determine corporate policy." *White v. Ultramar*, 981 P.2d 944, 952 (Ca. 1999) (quoting *Kelly-Zurian v. Wohl Shoe Co.*, 22 Cal. App. 4th 397, 421 (1994). Thus, "managing agent" includes "[a]n employee exercising authority that results in the ad hoc formulation of policy." *King* 53 Cal. App. 5th at 714 (citing *Egan v. Mut. of*

---

[1] "[R]atification" means "'confirmation and acceptance of a previous act'" where a managing agent "had actual knowledge of the malicious conduct and its outrageous character." *Cruz v. Homebase*, 83 Cal. App. 4th 160, 168 (2000) (citation omitted).

*Omaha Ins. Co*. 24 Cal.3d 809, 832 (1979)).  An employee is "a true managing agent" if plaintiff shows "that the employee exercised substantial discretionary authority over significant aspects of a corporation's business." *White,* 981 P.2d. at 954.

## II.     Argument

### A.     Managing Agents Ratified Moore's Conduct

Here, managing agents of PPG had advance knowledge of Moore's unfitness and, moreover, ratified his retaliatory decision to terminate Lawson.

When Lawson blew the whistle on Moore, he set off an investigation of the mis-tinting scheme, which implicated at least two other regional managers, who together with Moore reported to Division Manager Sean Kacsir.  *See* ECF No. 94 at 10, 15-16. The mis-tinting fraud cost PPG's customer, Lowe's, about $ 146,000 for Moore's region alone. *Id.* at 18.  The mis-tinting investigation was ultimately national in scope. *See id.* at 17.  PPG's HR managers, Mayhew and Minda—PPG's Director of HR— were both aware of the mis-tinting investigation, and that the investigation implicated Moore.  *See id.* at 25. They, along with Kacsir, were key players in what ultimately amounted to an orchestrated effort to terminate Lawson.

Kacsir was Moore's supervisor, and exercised oversight with respect to Moore's implementation of Lawson's PIP.  Given the evidence, including the involvement of three of his regional managers, a jury could find that Kacsir was a ringleader in the mis-tinting scheme, knew that Moore directed his TMs to mis-tint paint, and likely inferred that there had been a whistleblower.  *See* ECF No. 94-1 ¶ 57.  Kacsir's odd,

equivocating denial of his involvement, at a minimum, raises credibility issues on this point that cannot be resolved on summary judgment. *See* ECF No. 94 at 17-18. Furthermore, Kacsir participated in the denouement of Lawon's termination, first deciding (along with Moore and Mayhew) to extend the PIP after Lawson complained to Mayhew about Moore's conduct, and then directing Moore to conduct the final market walk with Lawson. *See* ECF No. 94-1 ¶¶ 66, 68. That final market walk—which Kacsir attended and which produced a drastically lower score—was the final justification needed to terminate Lawson. *See* ECF No. 94 at 21. In other words, Kacsir, like Moore, had motive to retaliate against Lawson and took steps to ensure there was an adequate paper trail. Thus, a reasonable jury could discredit Kacsir's testimony and find that he, in coordination with Mayhew, ratified Moore's retaliatory firing of Lawson.

Next, Minda knew, at a minimum, that the investigation grew out of an anonymous report from Moore's region. *See* ECF No. 94 at 25. And, in a tacit acknowledgement of Moore's misconduct, Minda eventually (and belatedly) issued Moore a formal written warning against penalizing TMs for "not mis-tinting"—a practice of Moore's that helped generate Lawson's low market walk scores. *See* ECF No. 94 at 12, 19. Mayhew, for his part, received direct complaints from Lawson about the unfairness of his market walk scores and Moore's continuous failure to hold up his end of the PIP. *See id.* at 20-21. Yet, in August 2017, when Moore requested Lawson's termination, Mayhew and Minda both signed off without question. *See id.* at

25. Indeed, Mayhew abruptly ended Lawson's termination meeting—exclaiming, "this meeting is over, I'm hanging up now"—after Lawson accused Moore of stealing from Lowe's. *Id.* at 26.

This evidence, which must be taken as true and construed in Lawson's favor at summary judgment, shows that Minda—who, as Director of HR, is unquestionably a "managing agent"—knew (1) about Moore's unfitness; (2) that an anonymous report from Moore's region launched the mis-tinting investigation; and (3), through Mayhew and her HR oversight function, about Lawson's complaints about Moore's implementation of the PIP. But Minda didn't take ***any*** action to protect Lawson; instead, she rubber-stamped his termination. This evidence would permit a jury to find that Minda ratified Moore's retaliation against Lawson.

In sum, the evidence here would permit a jury to conclude that both Kacsir and Minda ratified Moore's conduct. Two further points buttress this conclusion. First, it is notable that Moore received nothing more than a belated written reprimand from Minda and was rewarded with a job managing a PPG. *See* ECF No. 94 at 19. Second, PPG never informed Lowe's of the fraud. As such, a reasonable jury could conclude that Lawson's termination was part of a cover-up that included Minda and Kacsir.

**B.     Moore Was a Managing Agent.**

Next, PPG asserts that "Plaintiff has no evidence either [Moore or Mayhew] were an officer or managing director." ECF No. 95 at 15. But the evidence shows that Moore exercised considerable discretion and authority regarding Lawson's firing,

4

PLAINTIFF'S SUR-REPLY IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT
CASE NO. 8:18-CV-00705-JVS-JPR

resulting in ad hoc policy-making, and rendering him a "managing agent" here. *King*, 53 Cal. App. 5th at 714 (citing *Egan* 24 Cal.3d at 832 (1979)).

Like like the supervisor in *White*, Moore oversaw a "significant aspect" of PPG's business: he oversaw fourteen TMs, each of whom was responsible for multiple Lowe's stores—Lawson alone dealt with ten or eleven Lowe's stores.[2] *See* ECF No. 94 at 10; *see also White,* 981 P.2d. at 954. Next, although Moore consulted with Mayhew on whether to put Lawson on a PIP, the decision was ultimately Moore's. *See* ECF No. 94-1 ¶ 21. And, despite Lawson's direct complaints to Mayhew about the way Moore implemented the PIP, there is little evidence that Mayhew did anything to correct Moore's activities. *See* ECF No. 94 at 20.

Mayhew's lack of oversight allowed Moore to create ad hoc policy, preventing Lawson from successfully completing his PIP. Moore awarded Lawson zero points in multiple market walk categories with no good explanation. *See id.* at 22. He docked Lawson points contrary to PPG policy. *See id.* He reassigned Lawson to underperforming stores and removed Lawson from high-performing stores. *See id.* at 23. Moore accused Lawson of falsifying training rosters, despite having no evidence that Lawson deliberately did so. *See id.* at 24-25. Although PPG, like the defendants

---

[2] PPG's reliance on *Cruz*, 83 Cal. App. 4th at 167-68, on this point is misplaced. In *Cruz*, the supervisor in question "was not a manager of numerous stores, but only a supervisor subordinate to the store manager in a single outlet of a multi-store chain. He supervised only a few employees, and had authority over only one narrow area of the single store's multi-faceted operations: security." Moore, on the other hand (not to mention Minda, Mayhew, and Kacsir, discussed above) sat over more than a dozen TMs, each of whom managed PPG's affairs with numerous Lowe's locations. And, Moore had more general authority over his TMs.

in *White* and *King*, attempts to paint Moore as a low-level manager with little or no discretion, a jury could conclude that Moore exercised the kind of ad hoc policy making discretion necessary under § 3294(b) for him to be considered a "managing agent." *See White,* 981 P.2d. at 954; *King*, 53 Cal. App. 5th at 713-14.

The evidence further shows that Moore's conduct was retaliatory. Whether malice, fraud, or oppression—or all three, *see Cunning v. Skye Bioscience, Inc.,* No. SA CV 21-00710-DOC-KES, 2022 U.S.Dist.LEXIS 153711, at *22 (C.D.Cal. July 28, 2022) (defining oppression, fraud, and malice under § 3294)—Moore's decision to put Lawson on a PIP and then to ensure that Lawson could not succeed shows the kind of callous disregard required under § 3294. A reasonable jury could conclude such conduct warrants punitive damages against PPG.

### III.    Conclusion

PPG's Motion for Summary Judgment as to punitive damages should be denied.

Dated: October 24, 2022                Respectfully submitted,

/s/*Andrew J. Horowitz, Esq.*
Andrew J. Horowitz, Esq.

*Attorneys for Plaintiff Wallen Lawson*

## **CERTIFICATE OF SERVICE**

I, Andrew J. Horowitz, hereby certify that the within Brief has been served on all counsel of record this October 27, 2022, via the Court's CM/ECF filing system.

*/s/Andrew J. Horowitz, Esquire*

7

PLAINTIFF'S SUR-REPLY IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT
CASE NO. 8:18-CV-00705-JVS-JPR