**JS-6**

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:18-cv-00705 JVS (JPRx) | Date | November 23, 2022 |
| Title | Wallen Lawson v. PPG Architectural Finishes, Inc. | | |

| | | |
|---|---|---|
| Present: The Honorable | **James V. Selna, U.S. District Court Judge** | |
| Elsa Vargas for Lisa Bredahl | | Not Present |
| Deputy Clerk | | Court Reporter |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

**Proceedings:** **[IN CHAMBERS] <u>Order Regarding Motion for Summary Judgment [92]</u>**

This case comes before the Court on remand from the Ninth Circuit following the California Supreme Court's clarification of the applicable legal standard in employment whistleblower retaliation cases. (Dkt. No. 79.) Defendant PPG Architectural Finishes, Inc. ("PPG") moves for summary judgment on both remaining claims following remand. (Mot., Dkt. No. 92). Plaintiff Wallen Lawson ("Lawson") opposed the motion (Opp'n., Dkt. No. 94) and PPG responded (Reply, Dkt. No. 95). Lawson submitted a sur-reply on leave from the Court only on the issue of punitive damages. (Sur-Reply, Dkt. No. 99.) The Court heard oral argument on this matter on November 7, 2022.

For the following reasons, the Court **GRANTS** PPG's motion for summary judgment.

## I. BACKGROUND

### A. Factual Background

The operative facts have not changed since PPG's initial motion for summary judgment. (See Dkt. Nos. 57-59.)

#### 1. Wallace Lawson's Career at PPG

PPG manufactures and sells interior and exterior paints, stains, caulks, repair products, adhesives, and sealants through its own retail stores and other retailers, such as

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:18-cv-00705 JVS (JPRx)                    Date    November 23, 2022

Title        Wallen Lawson v. PPG Architectural Finishes, Inc.

Lowe's.  (Declaration of Clarence Moore, Dkt. No. 92-5, ¶ 2.)  In June 2015, PPG hired
Lawson as a Territory Manager ("TM"), a role which Lawson described as being "an
ambassador for the PPG company."  (Plaintiff's Statement of Genuine Disputes ("SGD"),
Dkt. No. 94-1, ¶ 2.)  Lawson's duties included "merchandizing Olympic paint and other
PPG products in Lowe's home improvement stores in Orange and Los Angeles counties"
and "ensur[ing] that PPG displays are stocked and in good condition."  (Id. ¶ 1.)
Although Lawson disagrees with PPG's characterization that TMs are "salespeople," it is
undisputed one metric in measuring the success of a TM is their ability to meet monthly
sales goals.  (Id. ¶ 3.)

    In PPG's organizational hierarchy, TMs report directly to a Regional Sales
Manager ("RSM"), who manages a team of TMs. (Id. ¶ 5.)  When Lawson first began as
a TM, he worked under RSM Paul Stanton.  However, during most of the events at issue
here, Lawson reported to RSM Clarence Moore ("Moore").  (Deposition of Wallace
Lawson at 28:4-7; Deposition of Andrew Mayhew at 52:11-18.)  Moore in turn reported
to Divisional Manager ("DM") Sean Kacsir.  (Deposition of Sean Kacsir at 15:20-16:8.)

    A TM's performance is measured using two main metrics: the TM's ability to meet
monthly sales goals, and the TM's score on company "Market Walks."  (SGD ¶¶ 4, 6.)
As noted above, although Lawson disagrees with PPG's characterization that TMs are
"salespeople," it is undisputed one metric in measuring the success of a TM is his or her
ability to meet monthly sales goals.  (Id. ¶ 3.)  A TM's sales goal is measured by the total
of the sales for that TM's stores year over year.  (Id. ¶ 4.)   In order to meet the sales goal,
the stores in a TM's territory must sell the same amount or product as was sold in that
same month the previous year.  (Id.)

    Market Walks consisted of RSMs and TMs visiting several stores within the TM's
assigned territory "and walk[ing] through the store to ensure TMs [were] building
relationships with Lowe's employees, PPG product is properly placed throughout the
store, and TMs are training and helping customers."  (Id. ¶ 6.)  Based on their
performance during Market Walks, TMs would be scored on a five-category spectrum
ranging from to "unsuccessful" to "exceptional."  (Id. ¶ 7.)

    Between October 2016 and August 2017, Lawson participated in six Market
Walks.  (SGD ¶¶ 9-10, 14, 22, 64, 69.)  As the timing and scoring of each walk is highly
relevant, the Court will list them all:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:18-cv-00705 JVS (JPRx)                    Date   November 23, 2022

Title   Wallen Lawson v. PPG Architectural Finishes, Inc.

| Market Walk | Date | Supervisor | Score Category | Score |
|---|---|---|---|---|
| 1 | October 2016 | Paul Stanton | Exceptional | 92 |
| 2 | December 2016 | Clarence Moore | Marginal | 60 |
| 3 | March 2017 | Clarence Moore | Unsuccessful | 58 |
| 4 | April 21, 2017 | Clarence Moore | Unsuccessful | 46 |
| 5 | July 13, 2017 | Clarence Moore | Marginal | 66 |
| 6 | August 17, 2017 | Clarence Moore | Unsuccessful | 40 |

On Lawson's first Market Walk in October 2016, his then-RSM Stanton gave him a score of 92, the highest Market Walk score in the country at the time, earning him an "exceptional" score, a small pay raise, and a gift card.  (Id. ¶ 9; Lawson Dep. 66:1-23.) Lawson's second through sixth Market Walks were conducted by Moore, following Stanton's termination from PPG.  Lawson's second Market Walk occurred in December 2016.  (SGD ¶ 10.)  Moore gave Lawson a score of 60, falling into the "Marginal" category.  (Id. ¶ 11.)  Lawson's third Market Walk, in March 2017, resulted in a score of 58, in the "Unsuccessful" category.  (Id. ¶¶ 22-23.)  Moore noted in his feedback that Lawson had exhibited deficiencies several metrics, including training Lowe's associates and completing his Training Roster,[1] completing PPG product demonstrations and displays, and obtaining the contact information of specific Lowe's employees.  (Moore Decl., Ex. C.)  Moore also sent Lawson an email identifying these shortcomings and areas for improvement.  (SGD ¶ 16.)

Shortly after Lawson's third Market Walk, Moore received Lawson's twelve-month sales numbers which showed that Lawson had missed his sales goal for eight of the twelve previous months.  (Id. ¶ 18.)  After Lawson earned a 46 on his fourth Market Walk on April 21, 2017, Moore discussed Lawson's performance issues with him and the possibility of beginning a Performance Improvement Plan.  Because of Lawson's Market Walk scores and his failure to meet sales goals, PPG human resources made the decision to place Lawson on a 60-day Performance Improvement Plan on the recommendation of Moore.  (SGD ¶ 20.)  The Plan was delivered to Lawson on May 12, 2017.  (Id. ¶ 38.)

Among other things, the Performance Improvement Plan required Lawson to earn a

---

[1]  A "Training Roster," which must be updated by the TM after each visit to a store, is a list of Lowe's associates that work at a given Lowe's store.  (Id. ¶ 5.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:18-cv-00705 JVS (JPRx)                    Date    November 23, 2022

Title    Wallen Lawson v. PPG Architectural Finishes, Inc.

Market Walk score of "successful" by the time the Plan expired in July 2017.  (Id. ¶ 40.)
Lawson did not meet this benchmark before the expiration date, earning a 66 on his
fourth Market Walk on July 13, 2017.  (Id. ¶ 64)  During this Market Walk, Moore told
Lawson he would inquire about extending the Performance Improvement Plan.  (Id. ¶
65.)  PPG extended Lawson's Plan by thirty days.

At the end of the additional thirty day period, Lawson went on his final Market
Walk on August 17, 2017, this time with both Moore and Kascir.  (SGD ¶ 67-70.)
Lawson was given another "unsuccessful" Market Walk score of 40, the lowest score
Lawson had received.  (Id. ¶ 69.)  The reasons Moore cited for giving Lawson such a low
score were (1) that Lawson visited his second highest volume store too few times; (2)
Lawson achieved no national or regional objectives at three of his stores; (3) Lawson
failed to train Lowe's associates according to PPG's monthly objective; (4) Lawson was
not tracking sales of at least one product; (5) Lawson failed to set up product displays;
and (6) Lawson failed to update his Training Roster, which contained inaccuracies.  (Id. ¶
71.)  Lawson's Market Walk report also noted that Lawson failed to adhere to PPG's
safety guidelines during the Walk, and that he later violated PPG policy by using his cell
phone such a low score were after which Moore and Kascir recommended Lawson be
terminated.  (Id. ¶ 72.)  Based on Moore's and Kascir's recommendations following this
Market Walk, Lawson was terminated on September 6, 2017.  (Id. ¶¶ 74-75.)

### 2.    Mis-Tinting Directive

Around the same time of Lawson's third Market Walk, Lawson attests that Moore
directed his TMs to "mis-tint" a particular PPG paint product that was not selling quickly
enough at Lowe's stores.  (Lawson Dep. 150:8-151:7; Lawson Decl. ¶ 7.)   This practice
forced Lowe's to place the mis-tinted paint "on an 'oops' rack next to the paint desk and
[sell it] at a deep discount." (Id.)  This in turn allowed PPG to avoid buying back unsold
inventory from Lowe's.  (Id.)

Lawson disagreed with this practice. (Id.)  On April 18, 2017, Lawson filed an
anonymous report using PPG's web-based confidential ethics reporting portal about the
directive to mis-tint PPG's paint products.  (SGD ¶¶ 28, 34.)  After filing this report,
Lawson also told Moore over the phone that Plaintiff believed mis-tinting was wrong and
that there was "no way" Lawson was going to participate in it.  (Lawson Dep. 234:25-
235:9.)  PPG followed up with the anonymous reporter to request more information.  (Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:18-cv-00705 JVS (JPRx)                    Date    November 23, 2022

Title       Wallen Lawson v. PPG Architectural Finishes, Inc.

¶ 31.)  But because Lawson never responded, so PPG closed the investigation.  (Id. ¶ 32.)


On June 15, 2017, Lawson called PPG's Ethics Helpline, operated by a third-party administrator, and submitted another anonymous complaint, again expressing concerns about Moore's directives to his TMs to mis-tint products.  (SGD ¶¶ 41, 43.)  In this complaint, Lawson indicated he wanted to remain anonymous toward PPG, and that he had not reported the incident in question to any supervisors or management.  (Id. 41.)  When PPG received this complaint, it did not receive the identity of the reporter, although it did gain the ability to contact the reporter.  (Id. ¶ 44.)  PPG's compliance department subsequently contacted Lawson to ask if he would speak with David Duffy, PPG's Senior Manager of Investigations and Corporate Security.  (Id. ¶¶ 45-46.)  Lawson agreed and provided Duffy with his personal cell phone number.  (Id. ¶ 47.)  PPG confirmed the conversation would be confidential.  (Id.)

Up until this point, it is undisputed that Lawson's identity as the reporter was completely anonymous.  However, Lawson testified in his deposition that when Duffy called him initially, the call went to his voicemail, which states his full name.  (Lawson Dep. 165:14-166:2.)  Lawson contends that this leads to the inference that Duffy learned Lawson's identity at that time, although Duffy testified that he did not know the speaker's identity when he reached Lawson on the phone later, and he did not reveal Lawson's identity to anyone.  (SGD ¶ 50.)

On June 28, 2017, Duffy and Lawson spoke about the mis-tinting allegations.  (Id. ¶ 48.)  Lawson testified that he did not recall identifying himself to Duffy during the conversation, and Duffy did not refer to Lawson by name.  (Id. ¶ 49.)  Duffy's conversation with Lawson led John Dalton, PPG's Forensic Audit and Loss Prevention Specialist, to interview Moore about the alleged mis-tinting.  (Id. ¶¶ 51-52.)  During that interview, Dalton told Moore that PPG's investigation was initiated to review expensed-out product, but did not inform Moore that an anonymous complaint had been filed.  (Id. ¶ 53.)  Dalton also interviewed all fourteen TMs who reported directly to Moore.  (Id. ¶ 54.)  Several TMs noted that Laura Sanchez, one of the TMs who reported to Moore, openly opposed Moore's directive to mis-tint paint, and stated that she would not carry out the practice.  (Id. ¶ 55.)

The investigation ultimately ended with Moore receiving a formal written warning

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:18-cv-00705 JVS (JPRx)                     Date   November 23, 2022

Title        Wallen Lawson v. PPG Architectural Finishes, Inc.

about his actions on February 22, 2018.  (Horowitz Decl., Ex. L.).  Throughout the investigation, Moore continued to supervise Lawson and accompanied him on his Market Walks.


    B.    *Procedural Background*


    Lawson's Second Amended Complaint alleged six causes of action against PPG. (Dkt. No. 37.)   PPG moved for summary judgment on all counts (Dkt. No. 57) which the Honorable Andrew Guilford (Ret.) granted in its entirety (see Dkt. No. 62.)  Lawson appealed the decision to the Ninth Circuit on two of his claims: (1) retaliation in violation of California Labor Code section 1102.5 and (2) wrongful termination in violation of public policy.  (Dkt. No. 69.)

    The Ninth Circuit noted a discrepancy between which causation standard courts applied when considering a Section 1102.5 claim on summary judgment and certified the following question to the California Supreme Court: "Does the evidentiary standard set forth in section 1102.6 of the California Labor Code replace the *McDonnell Douglas* test as the relevant evidentiary standard for retaliation claims brought pursuant to section 1102.5 of California's Labor Code?"  Lawson v. PPG Architectural Finishes, Inc., 982 F.3d 752, 753 (9th Cir. 2020).  In its order certifying this question to the California Supreme Court, the Ninth Circuit noted that the "decision of which standard ought to be applied is an important, outcome-determinative one."[2]  Id. at 760.  The California Supreme Court held that the statutory language of section 1102.6, and not the *McDonnell Douglas* test, is the relevant evidentiary standard for retaliation claims brought under

──────────────

    [2] At oral argument, counsel for Lawson pointed the Court to the Ninth Circuit's assertion that "while the district court held that Lawson's claims failed under the McDonnell Douglas test, it seems reasonably clear that Lawson would survive summary judgment under section 1102.6."  Lawson, 982 F.3d at 760.  Lawson's counsel argued that this was the Ninth Circuit conclusively holding in favor of Lawson at summary judgment, precluding a finding to the contrary from this Court.  However, Lawson's assertion is based on an incorrect reading of the Ninth Circuit's order.  The court expressly stated that it did "not reach or attempt to resolve the merits under either standard," but stated that the outcome of the case would turn on which standard controlled.  Id.  Accordingly, the "decision of which standard ought to be applied" was important because it could be "outcome-determinative."  Id.  As explained in this order, the Court has applied the standard specified by the California Supreme Court and found that Lawson's claims cannot survive summary judgment even under Section 1102.6.

──────────────

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:18-cv-00705 JVS (JPRx)                    Date   November 23, 2022

Title       Wallen Lawson v. PPG Architectural Finishes, Inc.

Section 1102.5.  Lawson v. PPG Architectural Finishes, Inc., 12 Cal. 5th 703, 712 (2022) ("Lawson").  The California Supreme Court did not address the applicable standard for a common law claim of wrongful termination in violation of public policy.

The Ninth Circuit vacated the district court's order granting summary judgment and remanded for further proceedings consistent with Lawson.  Lawson v. PPG Architectural Finishes, Inc., 2022 WL 396025 (9th Cir. Feb. 9, 2022).

## II. LEGAL STANDARD

Summary judgment is appropriate where the record, read in the light most favorable to the nonmovant, indicates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). Summary adjudication, or partial summary judgment "upon all or any part of [a] claim," is appropriate where there is no genuine dispute as to any material fact regarding that portion of the claim. Fed. R. Civ. P. 56(a); see also Lies v. Farrell Lines, Inc., 641 F.2d 765, 769 n.3 (9th Cir. 1981) ("Rule 56 authorizes a summary adjudication that will often fall short of a final determination, even of a single claim . . . ." (internal quotation marks omitted)).

Facts that are "material" are those necessary to the proof or defense of a claim, and are determined by referring to substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  To determine if a dispute about a material fact is "genuine," the trial court must not weigh the evidence and instead must draw all reasonable inferences in the nonmoving party's favor.  Tolan v. Cotton, 572 U.S. 650, 655–59 (2014) (per curiam). The nonmoving party cannot manufacture a "genuine dispute" by relying on allegations in the pleadings.  Anderson, 477 U.S. at 251; Oracle Am., Inc. v. Hewlett Packard Enter. Co., 971 F.3d 1042, 1049 (9th Cir. 2020).

A trial court may not resolve issues of credibility to determine whether a fact is "genuinely disputed." Tolan, 472 U.S. at 658–59.  To do so is to improperly weigh the evidence.  Id.  A court may discount uncorroborated, self-serving testimony where "it states only conclusions and not facts." Nigro v. Sears, Roebuck & Co., 784 F.3d 495, 497–98 (9th Cir. 2015).  However, a court may not discount "self-serving" testimony that includes contrary factual assertions and requires the observation of a witness's demeanor to assess credibility.  See Manley v. Rowley, 847 F.3d 705, 711 (9th Cir. 2017).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:18-cv-00705 JVS (JPRx)                Date    November 23, 2022

Title    Wallen Lawson v. PPG Architectural Finishes, Inc.

Furthermore, an undisputed fact may support several reasonable inferences, but a trial judge must resolve those differing inferences in favor of the nonmoving party.  Hunt v. Cromartie, 526 U.S. 541 (1999).  In deciding a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Anderson, 477 U.S. at 255.[3]

The moving party has the initial burden of establishing the absence of a material fact for trial.  Id. at 256. "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . ., the court may . . . consider the fact undisputed." Fed. R. Civ. P. 56(e)(2).  Furthermore, "Rule 56[(a)][4] mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.  To defeat summary judgment, the nonmoving party who bears the burden at trial must present more than a "mere scintilla" of "affirmative evidence."  Galen v. Cnty. of L.A., 477 F.3d 652, 658 (9th Cir. 2007) (citing Anderson, 477 U.S. at 248).  Furthermore, the nonmoving party "must direct the court's attention to specific, triable facts. General references without pages or line numbers are not sufficiently specific." S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003) (internal citations omitted). Therefore, if the nonmovant does not make a sufficient showing to establish the elements of its claims, the Court must grant the motion.

## III. DISCUSSION

    *A.    California Labor Code Section 1102.5*

---

[3] "In determining any motion for summary judgment or partial summary judgment, the Court may assume that the material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the 'Statement of Genuine Disputes' and (b) controverted by declaration or other written evidence filed in opposition to the motion." L.R. 56-3.

[4] Rule 56 was amended in 2010. Subdivision (a), as amended, "carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word — genuine 'issue' becomes genuine 'dispute.'" Fed. R. Civ. P. 56, Notes of Advisory Committee on 2010 amendments.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:18-cv-00705 JVS (JPRx)                          Date    November 23, 2022

Title       Wallen Lawson v. PPG Architectural Finishes, Inc.

      The first cause of action in Lawson's Second Amended Complaint alleges a violation of California Labor Code section 1102.5.  (Dkt. No. 37 ¶¶ 34-39.)  Section 1102.5(b) states in relevant part that "an employer . . . shall not retaliate against any employee for disclosing information . . . to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance . . . if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute."  Cal. Labor Code § 1102.5(b).  Section 1102.5(c) prohibits retaliation "against an employee for refusing to participate in an activity that would result in the violation of a state or federal statute."  Id. § 1102.5(c).

      1.     The California Supreme Court's Decision

      The California Supreme Court in Lawson held that the appropriate legal standard for analyzing retaliation claims brought pursuant to section 1102.5 of California's Labor Code is the evidentiary standard set forth in section 1102.6.  In doing so, the court explicitly "clarif[ied] that section 1102.6, and not McDonnell Douglas, supplies the applicable framework for litigating and adjudicating section 1102.5 whistleblower claims."  Lawson, 12 Cal. 5th at 712.  Section 1192.6 employs a two-step analytical framework.  "First, it must be 'demonstrated by a preponderance of the evidence' that the employee's protected whistleblowing was a 'contributing factor' to an adverse employment action."  Id. (quoting Cal. Labor Code § 1102.6).  Second, "the employer bears 'the burden of proof to demonstrate by clear and convincing evidence' that the alleged adverse employment action would have occurred 'for legitimate, independent reasons' even if the employee had not engaged in protected whistleblowing activities."  Id.  Accordingly, plaintiffs no longer need to satisfy McDonnell Douglas in order to meet their burden on 1102.5 retaliation claims.  Id. at 718.

      2.     Applying the Proper Legal Standard

      Having established the proper legal standard for this case, the Court now turns to the parties' arguments.  The parties do not contest that Lawson suffered an adverse employment action.  Although PPG does not concede that Lawson's anonymous complaints constituted protected activity (see Mot. 1-2, 15), it does not substantively contest it in its motion.  The Court will therefore accept that the anonymous complaints are protected activity for purposes of this motion.  PPG argues that it is entitled to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:18-cv-00705 JVS (JPRx)                    Date    November 23, 2022

Title    Wallen Lawson v. PPG Architectural Finishes, Inc.

summary judgment because there is no genuine dispute of material fact as to whether (1)
Lawson's complaints were a contributing factor to his termination, and (2) whether
PPG's evidence is sufficient to establish that it would have taken the action in question
for legitimate, independent reasons even if Lawson had not submitted the complaints.
(Id. at 16.)  The Court will address each in turn.

### a.    Contributing Factor

In order to prevail at trial, Lawson must show that his protected activity was a
"contributing factor" in his termination.  Lawson, 12 Cal. 5th at 713.  A contributing
factor includes "any factor, which alone or in connection with other factors, tends to
affect in any way the outcome of the decision."  Rookaird v. BNSF Ry. Co., 908 F.3d
451, 461 (9th Cir. 2018).  Accordingly, Lawson may meet his burden of proving unlawful
retaliation even when "other, legitimate factors also contributed to the adverse action."
Lawson, 12 Cal. 5th at 713-14.

In contesting that Lawson's protected activity was not a contributing factor to
PPG's decision to terminate him, PPG argues that none of the decision makers
responsible for Lawson's termination knew that Lawson submitted anonymous
complaints until after Lawson filed the present lawsuit.  (Mot. at 17.)  Accordingly, they
could not have retaliated against Lawson for actions they were not aware he took.
Indeed, there is no direct evidence in the record that Moore knew of the April 2017 or
June 2017 anonymous reports.  Lawson testified that he did not tell anyone at PPG that
he submitted either the April or June complaint.  (SGD ¶¶ 36, 41-43.)  Furthermore,
Lawson had no reason to believe Moore knew Lawson was the one who made either
report.  (SGD ¶¶ 35, 37, 44.)  Similarly, Duffy, Dalton, and Michelle Minda, the Director
of Human Resources, testified that they were unaware that Lawson was the person who
submitted the June 2017 report until this lawsuit was filed.  (Id. ¶¶ 50, 60-61.)  When
Dalton interviewed Moore regarding the investigation, he did not reveal to Moore that an
anonymous tip had been made, much less that it was made by Lawson.[5]  (Id. ¶ 53.)

---

[5] Lawson does not dispute that any of this testimony was made, but argues that the testimony's
credibility is at issue and the Court should therefore assume that Moore, Duffy, Dalton, and Minda were
aware that Lawson engaged in  protected speech.  However, is it within the Court's province to weigh
the credibility of testimony at summary judgment.  See Tolan, 472 U.S. at 658–59.  Accordingly, while
the Court will make all reasonable inferences in favor of Lawson, the Court will not weigh the evidence

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:18-cv-00705 JVS (JPRx)                    Date   November 23, 2022

Title   Wallen Lawson v. PPG Architectural Finishes, Inc.

 

Lawson contends that Duffy learned his identity when Duffy heard Lawson's voicemail greeting, and that knowledge is therefore imputed to Dalton and Minda. (Lawson Dep. 165:14-166:2.)  However, Duffy testified that he did not know the speaker's identity when he reached Lawson on the phone later, and he did not reveal Lawson's identity to anyone.  (SGD ¶ 50.)  Lawson does not point to the Court to any evidence that, even if Duffy learned Lawson's identify from his voicemail greeting, he shared that information with anyone else.  (Dalton Dep. 37:19-23; 63:25-64:5; 75:6-10; Minda Dep. 59:6-61:2.)  Cf. United States v. Porifera, Inc., 2022 WL 2158967, at *5 (N.D. Cal. June 15, 2022) (finding sufficient evidence of retaliation where supervisor was aware of the plaintiff's objection to fraudulent billing practices, and where there was evidence that the supervisor began pursuing the plaintiff's termination on the same day the plaintiff refused to sign inaccurate timesheets).

Lawson acknowledges that he does not have direct evidence that decisionmakers knew he was the whistleblower.  However, he asserts that the timeline and surrounding circumstances raise an inference that Moore and other decision makers knew of the complaints and his disapproval of the mis-tinting practice.  (Opp'n. at 31, 33.)  Temporal proximity is an appropriate consideration in demonstrating a nexus between the purported whistleblowing and the alleged retaliation.  Wiele v. Del. N. Co., Inc., 2022 WL 714392, at *7 (C.D. Cal. Mar. 4, 2022) (citing Pratt v. Rowland, 65 F.3d 802, 808 (9th Cir. 1995)).

Lawson testified in his deposition that he spoke with Moore at some point between April 18 and April 24, 2017, a few days after the conference call in which Moore instructed his TMs to mis-tint paint and after Lawson submitted the initial report. (Lawson Dep. 155:14-157:5.)  During this conversation, Lawson testified that he confronted Moore about mis-tinting, telling Moore he "wasn't comfortable purposely ruining paint." (Id. 155:16-17.)  Lawson noted that Moore was "very upset and . . . aggressive," shutting down the discussion.  (Id. 234:17-18.)  Accordingly, Lawson argues that a reasonable jury could infer that Moore knew Lawson had complained about his behavior and was therefore the anonymous reporter.

Taking all this evidence in the light most favorable to Lawson, the Court finds that

or its credibility.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:18-cv-00705 JVS (JPRx) | Date | November 23, 2022 |

| | |
|---|---|
| Title | Wallen Lawson v. PPG Architectural Finishes, Inc. |

Lawson has presented a genuine dispute as to whether Lawson's whistleblowing activity was a contributing factor in Moore's decision to terminate him.  Although Lawson had received poor Market Walk scores prior to making the initial complaint and confronting Moore, the adverse employment action did not occur until after he engaged in protected activity.  See Jaekel v. Aytu Vioscience, Inc., 2022 WL 3229339, at *4 (N.D. Cal. Aug. 10, 2022) (denying summary judgment where the plaintiff was demoted within three months and terminated within eight months of engaging in protected whistleblowing activity).  Cf. Robinson v. Compton Unified School Dist., 2022 WL 1617247, at *8 (Cal. Ct. App. May 23, 2022) (unreported) ("The challenged adverse employment action occurred *before* Robinson's alleged whistleblowing activity.") (emphasis in original).

PPG argues that Lawson's discussion with Moore does not necessarily lead to an inference that Moore retaliated against him.  Another one of Moore's TMs, Laura Sanchez, also openly opposed Moore's directive to mis-tint paint and stated that she would not carry out the practice. (Dalton Dep. 57:8-14.)  Not only was Sanchez not terminated after expressing her disapproval of Moore's directive, but she remained employed as a TM until Lowe's cancelled its contract with PPG in March 2018.  (Moore Decl. ¶ 17.)  Accordingly, PPG contends that if Moore was motivated by animus towards people who vocally opposed mis-tinting, then Sanchez would have also been fired. (Mot. at 21.)  While this is a valid inference, in order to meet his burden, Lawson must only show that retaliation for protected activity towards *him* was a contributing factor leading to his termination.  For the aforementioned reasons, the Court finds that Lawson has met his burden.

To be sure, many of Lawson's arguments are flimsy at best.  For example, Lawson argues that "a reasonable jury could also infer that Moore surmised that an ethics report was made against him regarding the mis-tinting scheme and that Lawson was the reporter." (Opp'n. at 35.)  Therefore, according to Lawson, a "reasonable jury could infer that Lawson was Moore's prime suspect if he believed that Dalton's interest in mis-tinting arose from a report by someone on his team." (Id.)  However, Lawson presents no evidence in support of this argument.  To survive summary judgment, "a plaintiff must set forth non-speculative evidence of specific facts, not sweeping conclusory allegations" and must do more than establish that a "set of events could conceivably have occurred." United States v. TruConnect, 2022 WL 3009130, at *8 (C.D. Cal. June 21, 2022) (quoting United States ex rel. Cafasso v. Gen Dynamics C4 Sys., Inc., 637 F.3d 1047, 1060 (9th Cir. 2011)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:18-cv-00705 JVS (JPRx)                    Date    November 23, 2022

Title    Wallen Lawson v. PPG Architectural Finishes, Inc.

Had Lawson relied solely on allegations such as these, he would not have met his burden.  However, Lawson has also presented evidence that he confronted Moore about Moore's purportedly illegal activity prior to the adverse employment action, Moore became angry, and Lawson was terminated some time after.  From this, a reasonable jury could infer that Moore engaged in unlawful retaliation.  See Abernathy v. Duncan Enter., 2022 WL 1789908, at *9 (Cal. Ct. App., June 2, 2022) (unreported) ("the analysis under section 1102.6 requires, at minimum, some valid inference that the protected action was a contributing –  i.e., substantial or motivating – factor in the resulting harm.").  Although PPG has non-retaliatory reasons for terminating Lawson, explored below, Lawson has carried his statutory burden by showing that PPG "also had at least one retaliatory reason that was a contributing factor in the action."  Lawson, 12 Cal. 5th at 715.

> **b.      Legitimate, Independent Reasons**

The burden now shifts to PPG to show by clear and convincing evidence that it would have terminated Lawson for legitimate, independent reasons even if Lawson had not engaged in protected activity.  Lawson, 12 Cal. 5th at 718.  Clear and convincing evidence requires that PPG show that its alternative explanation is "highly probable."  See CACI 201; Vataloro v. County of Sacramento, 79 Cal. App. 5th 367, 386 (2022).  Although this burden of proof is higher than what is required of Lawson, it does not require absolute certainty.  The Court finds that PPG has met its burden.

PPG presents significant evidence of legitimate, independent reasons for Lawson's termination, many of which predate Moore instructing his team to mis-tint paint.  First, Lawson struggled meeting his sales goals long before he engaged in any protected activity.  Beginning in October 2016, Lawson missed his sales goal for six consecutive months.  (SGD ¶ 18.)  Lawson asserts that TMs are not sales people, and therefore measuring their success against how much PPG product a given store sells is an unfair metric.  (Opp'n. at 22.)  However, the ways in which PPG assesses its employees is not at issue here, nor is it the Court's task to "determine that the employer's business judgment or policies [] appeal to its sensibilities."  White v. Home Depot U.S.A., 2019 WL 1171163 at * 12 (S.D. Cal. 2019) (quoting Phipps v. Gary Drilling Co., 722 F. Supp. 615, 621 (E.D. Cal. 1989)).

Lawson does present evidence that Moore realigned store assignments after he took over as the regional supervisor and assigned Lawson three underperforming stores,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:18-cv-00705 JVS (JPRx)                    Date   November 23, 2022

Title      Wallen Lawson v. PPG Architectural Finishes, Inc.

one of which was later shut down completely.  (Lawson Decl. ¶ 15.)  Lawson argues that
a jury "may view PPG's reliance upon such sales metrics as a justification for putting him
on a PIP and firing him as pretextual."  (Opp'n. at 22.)  Lawson relies on Lees v. Thermo
Electron Corporation, an age discrimination case, in support of this proposition.  2008
U.S. Dist. LEXIS 86367 (S.D. Ohio, Sep. 4, 2008).  But, in addition to Lees being out of
circuit and utilizing the McDonnell Douglas framework, the facts of Lees are quite
different from the facts now before the Court. The court in Lees denied summary
judgment in an age discrimination case where the plaintiff presented sufficient evidence
to show pretext by showing that plaintiff's supervisor terminated him after only one visit
to his territory, "knowing that meeting his numbers in the realigned territory he had been
given was a challenge."  Id. at *27. The plaintiff also presented evidence comparing his
performance to a similarly underperforming, but younger, employee.  Id.

        Here, conversely, Lawson presents no evidence of other TMs' sales metrics or
whether other TMs stores were similarly realigned.  Nor does Lawson point to any
evidence that Moore had control or discretion over which stores were assigned to which
TMs.  Furthermore, Lawson's failure to meet sales goals predated store realignment by
several months.  (SGD ¶ 18; Lawson Dep. 148:17-149:3.)  Additionally, the store re-
assignment occurred prior to Lawson engaging in any protected activity.  (Id.)  Finally,
Lawson argues that he only missed his sales goals by a small margin, and therefore it is
"fair to posit that Lawson would have significantly exceeded the alleged sales goals for
every month . . . had he not been handicapped by Moore's adverse store substitution."
(Opp'n. at 23.)  However, "an employee's subjective personal judgments of [their]
competence alone does not raise a genuine issue of material fact."  Bradley v. Harcourt,
Brace & Co., 104 F.3d 267, 270 (9th Cir. 1996).

        Second, PPG cites to Lawson's poor scores on Market Walks as an independent,
legitimate reason for his termination.  (Mot. at 20.)  Lawson contends that his previous
supervisor scored him much higher on Market Walks than Moore, and therefore a jury
may infer that Moore unfairly gave Lawson low score in retaliation.  (Opp'n. at 39.)
However, Lawson scored poorly on his Market Walks with Moore beginning before any
protected activity occurred.  Between November 2016 and April 2017, Lawson went on
three Market Walks and received an "unsuccessful" score twice and a "marginal" score
once.  (SGD ¶ 11, 14, 23.)  Furthermore, Lawson does not proffer any data to which the
Court may compare Lawson's scores to determine if Moore generally scored his TMs
lower than Stanton, or if Moore scored Lawson unreasonably lower than other TMs in his

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:18-cv-00705 JVS (JPRx)                    Date    November 23, 2022

Title      Wallen Lawson v. PPG Architectural Finishes, Inc.

region.  Cf. Winarto v. Toshiba Am. Elec. Components, Inc., 274 F.3d 1276, 1285 (9th Cir. 2001) (upholding a jury's finding of retaliation where plaintiff "offered substantial evidence of retaliation or evidence from which retaliation could be inferred," including evidence that plaintiff's low scores were given after she engaged in protected activity). Lawson must offer more than conclusory allegations to overcome PPG's significant showing of independent, legitimate reasons for terminating him.  See Vatalaro v. County of Sacramento, 79 Cal. App. 5th 367, 385 (2022) (noting that the plaintiff's arguments lacked evidentiary support and therefore could not rebut the defendant's showing of independent and legitimate reasons for termination).

Lawson also had issues with other duties, such as maintaining an up-to-date and accurate training roster, developing relationships with key employees at Lowe's stores in his territory, and placing product in required areas throughout stores under his supervision.  (SGD ¶¶ 11-17, 23-25.)  Lawson strongly disputes that he "falsified" his training roster, citing to Mayhew's deposition testimony in which Mayhew admits Lawson never used the word "falsified."  (Mayhew Dep. 84:1-84:12.)  However, this argument is merely semantics: Lawson did admit to submitting inaccurate information on his training roster.  (SGD ¶ 80.)

Finally, PPG gave Lawson multiple opportunities and support to improve his performance.  The original 60-day Performance Improvement Plan was extended by 30 days after Lawson narrowly missed the passing score he needed.  PPG asserts it extended the Plan because Lawson had shown some signs of improvement, and his Market Walk score was only four points shy of the benchmark score.  (SGD ¶ 63.)  Additionally, Moore supported extension "because he recognized that he had not been able to check-in with Lawson as frequently as intended."  (Id. ¶ 64.)

Lawson maintains that even these second and third opportunities for improvement prior to termination are pretextual.  According to Lawson, the reason for the Plan's extension was due to Lawson's complaint to Andrew Mayhew, a member of  PPG's human resources team, that Moore had failed to administer the Plan in a manner consistent with PPG's policies.  (Mayhew Dep. 79:1-14.)  However, the cited testimony does not support such a proposition.  When asked why Lawson's Performance Improvement Plan was extended, Mayhew said it was "based off of the facts that when [Lawson] had called me we had taken everything into consideration and we had to determine what actions we should take with Wally and his performance."  (Id.)  When

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:18-cv-00705 JVS (JPRx)                    Date   November 23, 2022

Title   Wallen Lawson v. PPG Architectural Finishes, Inc.

read in the light most favorable to Lawson, this quoted language at most supports the notion that Lawson's call to Mayhew contributed to PPG's HR team extending the Plan, but does not negate Moore's own decision to request an extension on Lawson's behalf.

Lawson further argues that Moore intentionally withheld assistance from Lawson during his first PIP in contradiction of PPG policy, awarded Lawson zero points on multiple walk categories with no "good explanation," and scored Lawson inconsistently. (Opp'n. at 21-22.)  None of these arguments are supported by the record such that they create a genuine dispute.  First, Moore recognized that he did not provide as much assistance as he should have during the first 60-days of Lawson's PIP, which is partially why he advocated for an extension.  (SGD ¶ 64.)  Second, Moore included detailed comments in Lawson's report when he deducted points at each Market Walk.  And, as previously noted, "an employee's subjective personal judgments of [their] competence alone does not raise a genuine issue of material fact."  Bradley v. Harcourt, Brace & Co., 104 F.3d 267, 270 (9th Cir. 1996).  Finally, Lawson contends that Moore only agreed to request the 30-day extension because Moore wanted to dispel the appearance of bias or retaliation.  (Opp'n. at 21.)  Again, this is a conclusory statement with no evidentiary support.  Vatalaro, 79 Cal. App. 5th at 387 (noting the plaintiff's arguments lacked evidentiary support).

Lawson also asserts that Moore's scoring of his Market Walks were routinely unfair.  Lawson points to Moore's giving him no points for product placements even though he had more product placements than required.  (Lawson Dep. 46:2-47:3.)  Additionally, Moore deducted five points during the August 2017 Market Walk because Lawson failed to clock out after his shift one day, despite the fact that PPG policy requires docking points only after multiple such instances.  When questioned on this, Moore testified in his deposition that this metric is "very important to" him.  (Moore Dep. 218:5-18.)[6]  As with others of Lawson's arguments, he has not presented any evidence that Moore scored Lawson differently than his other TMs in this regard that would lead to

---

[6] Throughout his deposition, Moore continually denied instructing his TMs to mis-tint paint, a fact which is belied by Dalton's testimony that he interviewed fourteen of Moore's TMs who confirmed that Moore did, in fact, make such an instruction.  (Horowitz Decl., Ex. G.)  Lawson asks the Court to disregard Moore's deposition in its entirety because a "reasonable jury could completely disbelieve all statements by Moore."  (Opp'n. at 36.)  However, Lawson himself relies on some of Moore's statements in support of his arguments.  Accordingly, the Court declines to discredit Moore's deposition.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:18-cv-00705 JVS (JPRx)                    Date   November 23, 2022

Title       Wallen Lawson v. PPG Architectural Finishes, Inc.

an inference of retaliation.  See S.A. Empresa de Vioacoa Aerea Rio Grandense v. Walter
Kidde & Co., 690 F.2d 1235, 1238 (9th Cir. 1982) ("a party cannot manufacture a
genuine issue of material fact merely by making assertions in its legal memoranda").
Furthermore, Moore's supervisor, Kacsir attended this final Market Walk.  He reviewed
Lawson's Market Walk score and, based on what he witnessed during the Walk, Kacsir
testified that he believed Lawson's Walk was fairly scored.  (Kacsir Dep. 133:5-10.)
Moore and Kacsir met with Lawson the day after his final Market Walk to discuss the
results.  (Lawson Dep. 102:22-103:9.)

Taken together, the Court finds that PPG has met its burden under section 1102.6
to show that it would have terminated Lawson for legitimate, independent reasons even if
Lawson had never submitted the anonymous complaints or voiced his disapproval of the
mis-tint directive to Moore. Accordingly, the Court **GRANTS** summary judgment in
favor of PPG on Lawson's first cause of action.

### B.       Wrongful Termination in Violation of Public Policy

The Court now turns to Lawson's second cause of action.  The parties disagree
about which legal standard should be applied to this claim.  Lawson contends that the
same standard the California Supreme Court set out in Lawson should apply to this claim,
while PPG argues that McDonnell Douglas still controls.  (Mot. 23; Opp'n. 38.)
However, there is no basis to merge the common law and statutory torts, and certainly not
in Lawson itself.  Ultimately, it is unnecessary for the Court to reach this question in the
first instance because the result is the same.

Among other things, Lawson's second claim requires him to prove that his
termination was "substantially motivated a violation of public policy."  Nosal-Tabor v.
Sharp Chula Vista Med. Ctr., 239 Cal. App. 4th 1224, 1235 (2015) (quoting Yau v.
Allen, 229 Cal. App. 4th 144, 154 (2014).  Lawson argues that PPG's actions meet this
element because it is California's public policy, "as set forth in California Labor Code §
1102.5, that an employer may not retaliate or in any manner discriminate against an
employee for making an oral or written complaint regarding illegal activity."  (SAC ¶
42.)  Lawson's claim for wrongful termination is therefore predicated on the same alleged
retaliation that was the basis of his first claim.  Because the Court granted summary
judgment in favor of PPG on that claim, Lawson's claim necessarily fails.  The Court
therefore **GRANTS** summary judgment in favor of PPG on Lawson's second claim.  For

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:18-cv-00705 JVS (JPRx) | Date | November 23, 2022 |

| | |
|---|---|
| Title | Wallen Lawson v. PPG Architectural Finishes, Inc. |

this reason, the Court further finds it unnecessary to address the parties arguments regarding punitive damages.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** PPG's motion for summary judgment on both of Lawson's remaining claims for relief.

**IT IS SO ORDERED.**