THEODORE A. SCHROEDER, PA Bar No. 80559 *(pro hac vice)*
tschroeder@littler.com
LITTLER MENDELSON, P.C.
625 Liberty Avenue
26th Floor
Pittsburgh, PA 15222
Telephone: 412.201.7600
Fax No.: 412.456.2377

MIKO SARGIZIAN, Bar No. 285976
msargizian@littler.com
LITTLER MENDELSON, P.C.
18565 Jamboree Road
Suite 800
Irvine, California 92612
Telephone: 949.705.3000
Fax No.: 949.724.1201

KARIN M. COGBILL, Bar No. 244606
Karin.Cogbill@jacksonlewis.com
JACKSON LEWIS, P.C.
160 W Santa Clara St.
Suite 400
San Jose, CA 95113
Telephone: 408.579-0404

Attorneys for Defendant
PPG ARCHITECTURAL FINISHES, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WALLEN LAWSON,<br><br>      Plaintiff,<br><br>v.<br><br>PPG ARCHITECTURAL FINISHES, INC.,<br><br>      Defendant. | Case No. 8:18-CV-00705 JVS-JPR<br><br>**DEFENDANT PPG ARCHITECTURAL FINISHES, INC.'S MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FRCP 50**<br><br>Trial Date: April 22, 2025<br>Time: 9:00 a.m.<br>Crtrm: 10C |

# **TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................1

II. LEGAL STANDARD .........................................................................................1

III. ARGUMENT ......................................................................................................3

   A.  Plaintiff Has Not Established by a Preponderance of the Evidence that His Alleged Protected Activity was a Contributing Factor in PPG's Decision to Terminate His Employment. ...................................................................3

      1.  Plaintiff has not demonstrated PPG was aware of the alleged protected activity, or that it occurred in the first instance. .........................................3

      2.  Plaintiff's poor performance *before* any alleged protected activity continued through to his termination. .......................................................7

   B.  PPG Has Established by Clear and Convincing Evidence That, Notwithstanding Any Alleged Protected Activity, It Terminated Plaintiff for Legitimate, Independent Reasons. .....................................................8

   C.  Plaintiff Has Not Established by a Preponderance of the Evidence that He was Terminated in Violation of Public Policy. .............................9

   D.  Plaintiff Has Not Established by Clear and Convincing Evidence that He is Entitled to Punitive Damages. ..................................................9

      1.  No One Employed by PPG Acted With Malice, Oppression, Or Fraud In Terminating Mr. Lawson's Employment. .............................10

      2.  No Managing Agent Was Involved in the Alleged Conduct. ...................11

      3.  Plaintiff Cannot Recover Punitive Damages Based On Conduct Not Directed Towards Him. .....................................................................13

III. CONCLUSION ................................................................................................13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ace v. Aetna Life Ins. Co.*,
  139 F.3d 1241 (9th Cir.1998) ................................................................. 7

*Acosta v. City Nat'l Corp.*,
  922 F.3d 880 (9th Cir. 2019) .................................................................. 6

*Barton v. Alexander Hamilton Life Ins. Co. of Am.*,
  3 Cal. Rptr. 3d 258 (Ct. App. 2003) ..................................................... 16

*Butte Copper & Zinc Co. v. Amerman*,
  157 F.2d 457 (9th Cir. 1946) .................................................................. 6

*Cruz v. HomeBase*,
  99 Cal. Rptr. 2d 435 (Ct. App. 2000) ................................................... 15

*Feretti v. Pfizer Inc.*,
  No. 11cv4486, 2013 WL 140088 (N.D. Cal. June 6, 2016) ............... 10

*Kelly-Zurian v. Wohl Shoe Co.*,
  22 Cal. App. 4th 397 (1994) ................................................................ 16

*Kolstad v. American Dental Ass'n*,
  527 U.S. 526 (1999) ............................................................................ 16

*Lackner v. North*,
  135 Cal.App.4th 1188 (2006) .............................................................. 17

*Martinez v. Heckler*,
  807 F.2d 771 (9th Cir.1986) .................................................................. 5

*Mathieu v. Norrell Corp.*,
  115 Cal.App.4th 1174 (2004) .............................................................. 15

*Orn v. Astrue*,
  495 F.3d 625 (9th Cir. 2007) ................................................................. 6

*Roddenberry v. Roddenberry*,
  44 Cal.App.4th 634 (1996) .................................................................... 6

*Soremekun v. Thrifty Payless, Inc.*,
  509 F.3d 978 (9th Cir. 2007) ................................................................................ 6

*Sorenson v. Weinberger*,
  514 F.2d 1112 (9th Cir. 1975) .............................................................................. 6

*Tomaselli v. Transamerica Ins. Co.*,
  31 Cal. Rptr. 2d 433 (Ct. App. 1994) ................................................................ 14

*Velazquez v. City of Long Beach*,
  793 F.3d 1010 (9th Cir. 2015) ......................................................................... 5, 6

*White v. Ultramar, Inc.*,
  21 Cal. 4th 563 (1999) ................................................................................ 15, 16

**Statutes**

Cal. Civ. Code § 3294 .............................................................................................. 14, 17

Cal. Civ. Code § 3294(a) ................................................................................................ 17

Cal. Civ. Code § 3294(b) ................................................................................................ 15

Cal. Labor Code § 1102.5 ........................................................................................ *passim*

**Other Authorities**

Fed. R. Civ. P. 50(a) ......................................................................................................... 5

## I. INTRODUCTION

At this stage in the case, there are two causes of action remaining: (1) the alleged violation of Cal. Labor Code § 1102.5; and (2) Wrongful Termination in Violation of Public Policy. Both claims stem from Plaintiff Wallen Lawson's claim that he was wrongfully terminated in retaliation for reporting, and allegedly refusing to participate in, alleged unlawful conduct. The evidence presented at trial confirms the following:

***First,*** Plaintiff has failed to carry his burden of establishing that his alleged protected activity was a contributing factor in PPG's decision to terminate his employment.

***Second,*** PPG has established by clear and convincing evidence that it terminated Plaintiff for legitimate, independent reasons notwithstanding any alleged protected activity.

***Third,*** Plaintiff has failed to establish by clear and convincing evidence that PPG acted with malice, fraud, or oppression in terminating Plaintiff's employment.

## II. LEGAL STANDARD

Under Fed. R. Civ. P. 50(a), "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue" the court may resolve the issue against the party and grant a motion for judgment as a matter of law ("JMOL"). Fed. R. Civ. P. 50(a). "When deciding whether to grant a Rule 50(a) motion, '[t]he court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence.'" *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1018 (9th Cir. 2015) (*citing Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 150, 120 (2000)). The entire record must be considered, weighing both the evidence that supports and detracts from the plaintiff's conclusions. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir.1986).

Further, in ruling upon a JMOL motion, a federal court sitting in diversity

applies the governing law, in this case California State law, to determine whether the evidence is sufficient to support a verdict in favor of the non-moving party. *Velazquez, supra* at 1018 (internal citations omitted). Under California law, the jury's verdict must be supported by "substantial evidence," not just any evidence:

> "Instead, it is 'substantial' proof of the essentials which the law requires. The focus is on the quality, rather than the quantity, of the evidence. Very little solid evidence may be 'substantial,' while a lot of extremely weak evidence might be 'insubstantial.' Inferences may constitute substantial evidence, but they must be the product of logic and reason. Speculation or conjecture alone is not substantial evidence."

*Roddenberry v. Roddenberry*, 44 Cal.App.4th 634, 651 (1996) (internal citations omitted).

The federal standard is the same; substantial evidence requires a showing of more than a scintilla of evidence, although less than a preponderance of evidence is required. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). Further, evidence is substantial if "a reasonable mind might accept as adequate to support a conclusion." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). The question is not whether there is "literally no evidence" supporting the party against whom the motion is directed, but whether there is evidence upon which the jury could "properly proceed to find a verdict" for that party. *Butte Copper & Zinc Co. v. Amerman*, 157 F.2d 457 (9th Cir. 1946).

A reviewing court must also consider the substantive evidentiary burden of proof that would apply at trial to the nonmovant's claims. *Acosta v. City Nat'l Corp.*, 922 F.3d 880 (9th Cir. 2019) (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986) ("we are convinced that the inquiry involved in a ruling on a motion for ... directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits")). When the moving party does not have the burden of proof on a particular claim, it "can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). Even if JMOL is not

appropriate as to all claims, a partial JMOL may be granted on specific claims or issues in a case. *See, e.g., Ace v. Aetna Life Ins. Co.*, 139 F.3d 1241, 1247 (9th Cir.1998).

### III. ARGUMENT

#### A. Plaintiff Has Not Established by a Preponderance of the Evidence that His Alleged Protected Activity was a Contributing Factor in PPG's Decision to Terminate His Employment.

In order to prevail on his claim under Section 1102.5, Plaintiff must establish that his alleged protected activity was a contributing factor in PPG's decision to terminate his employment. He has not done this for at least two reasons. First, the alleged protected activity was either not known to the decision makers and/or, it never happened. Second, prior to any alleged protected activity, Plaintiff was underperforming, and the same performance issues that existed before the protected activity continued through to his termination. Likewise, PPG was managing Plaintiff's performance through a progressive discipline process that began before, and was carried to its logical conclusion following, the alleged protected activity.

##### 1. Plaintiff has not demonstrated PPG was aware of the alleged protected activity, or that it occurred in the first instance.

The evidence at trial confirms that Plaintiff has not shown by a preponderance of the evidence that his alleged protected activity was a contributing factor in PPG's decision to terminate his employment.

Plaintiff testified he engaged in protected activity through (1) his April 21, 2017 complaint to PPG's ethics hotline; (2) his June 15, 2017 complaint to PPG's ethics hotline; and (3) his alleged three minute conversation with Mr. Moore on April 25, 2017, wherein he was "trying to convince Mr. Moore to stop, to not do it, not to mistint anymore paint,"[1] and that Mr. Lawson felt "very strongly that it was wrong,

---

[1] T.R., April 23, 2025, Volume 1, 61:5-8.

and we shouldn't be doing it."[2]

As to the April 21, 2017 report, Plaintiff was unequivocal that he submitted this report anonymously because he did not want Mr. Moore or anyone else to know he was the reporter, and that he never told Mr. Moore that he submitted the report.[3]

Plaintiff presented no evidence that anyone at PPG was aware he had made that report:

> Q. You had not told anyone at PPG that you made the earlier April complaint, correct?
> A. No, I didn't.[4]

Nor did Mr. Lawson have any reason to believe that Mr. Moore or Mr. Mayhew knew he had made the April complaint.[5]

As to the June 2017 complaint, Plaintiff again testified that he submitted that complaint anonymously.[6] Plaintiff also confirmed that he never told Mr. Moore, or anyone at PPG that he made the June complaint.[7] Nor did Mr. Lawson have any reason to believe that Mr. Moore or Mr. Mayhew knew he had made the June complaint.[8] Although Plaintiff spoke with Mr. Duffy as part of the investigation, Plaintiff confirmed Mr. Duffy never used his name during the conversation.[9] Mr. Duffy testified that he was not aware that the anonymous reporter was Mr. Lawson,[10] and there is **no evidence** that Mr. Duffy ever revealed Mr. Lawson's name to anyone else. In fact, in an email following the call, Mr. Duffy stated "[t]he reporter did not provide a name – since they were still concerned about remaining anonymous."[11] This

---

[2] T.R., April 23, 2025, Volume 1, 61:20-23.
[3] T.R., April 25, 2025, Vol. II, 26:12-20.
[4] T.R. April 25, 2025, Volume II, 35:25-36:2.
[5] T.R. April 25, 2025, Volume II, 36:3-8.
[6] T.R. April 25, 2025, Volume II, 28:20-22.
[7] T.R. April 25, 2025, Volume II, 33:2-4; 35:19-21.
[8] T.R., April 25, 2025, Volume II, 36:3-8.
[9] T.R., April 25, 2025, Volume II, 30:19-22.
[10] T.R., April 25, 2025, Volume II, 48:16-17; Duffy Depo., 16:8-15, 18:20-21, 19:1-4, located at ECF 155-4.
[11] Exhibit 50.

is consistent with every single other witness who either testified that they did not know where the report originated from, or that there was even a report in the first instance:

Mr. Dalton testified that he was not aware that Mr. Lawson made the ethics complaint which gave rise to the investigation.[12]

Ms. McKinley testified that she was not told who made the ethics report, nor did she later learn that it was Mr. Lawson.[13]

Mr. Mayhew testified that no one advised him Plaintiff had called the ethics hotline, that he understood the complaint to be anonymous, and was not aware that the complaint was made by a territory manager in Mr. Moore's region.[14]

Ms. Minda testified she did not know who made the June 2017 complaint.

Mr. Kacsir testified that he did not know Mr. Lawson had 'blown the whistle' on Mr. Moore. Nor was he aware that that there was an investigation about misting of the paint.[15]

And finally, Mr. Moore testified that he was not aware there had been any complaint, let alone that it originated from one of his territory managers.

This is also consistent with multiple Trial Exhibits which consistently refer to the reporter as the "anonymous reporter." *See* Exhibits 50, 51, 78.

That leaves only the conversation Plaintiff claims he had with Mr. Moore on April 25, 2017. Plaintiff's testimony regarding that conversation is simply not plausible, and a reasonable fact finder would conclude it never happened. First, according to Plaintiff, in a matter of three minutes, he told Mr. Moore the practice was wrong, told him a story about a former co-worker who was stealing postage from the

---

[12] T.R., April 29, 2025, Vol. II, 8:20-24; Dalton Depo., 37:19-38:15, located at ECF 166-1.
[13] T.R., April 29, 2025, Vol. II, 3:13-17; McKinley Depo., 10:10-11:5, located at ECF 155-7.
[14] T.R., April 29, 2025, Vol. I, 10:5-7; Mayhew Depo., 35:3-8; 41:14-20; 41:23-24, 42:2-4, located at ECF 155-6.
[15] T.R., April 29, 2025, Vol. I, 9:2-11; Kascir Depo., 55:25 – 56:1-3; 69:11-14: 70:23; 71:1-2; 71:14-17; 71:20-21, located at ECF 155-5.

Company,[16] and told him a story about John Dean and Watergate.[17] Second, according to Plaintiff, this conversation took place a mere four days after he had just made an ***anonymous*** complaint because he did not want Mr. Moore to know about the complaint. Third, two months *later*, when submitting the June complaint, Plaintiff both went back to being anonymous, and also stated that he had not reported the alleged unlawful conduct to any in supervision or management.[18] Finally, there is no evidence that any time while he was on the Performance Improvement Plan, Mr. Lawson told anyone at PPG – including Mr. Duffy or Mr. Dalton who were investigating the mistinting complaint, or Mr. Mayhew who was assisting in managing the PIP – that he believed he was being retaliated against for telling Mr. Moore that he would not engage in mistinting. This is true despite PPG's Global Code of Ethics prohibiting retaliation against employees who raise a good faith concern,[19] and Plaintiff's clear understanding of both the Code of Ethics and the mechanism for reporting concerns.

Because the individuals involved in the decision to terminate Plaintiff's employment did not know Plaintiff submitted either anonymous complaint until after Plaintiff was terminated, and because the evidence does not support any plausible opposition directly to Mr. Moore, Plaintiff cannot show that his alleged actions were a contributing factor in the Company's decision to terminate his employment. *See Feretti v. Pfizer Inc.*, No. 11cv4486, 2013 WL 140088, at *10 (N.D. Cal. June 6, 2016) ("Thus, Plaintiff may establish causation by showing that: (1) one of the decision makers responsible for each of the adverse employment actions taken against Plaintiff had knowledge that Plaintiff had engaged in protected activity, and (2) there is a close proximity in time between the protected activity and the adverse employment action.")

---

[16] T.R. April 23, 2025, Vol. I, 61:20-62:9.
[17] T.R. April 23, 2025, Vol. I, 64:12-19.
[18] T.R. April 25, 2025, Volume II, 28:20-22; Exhibit 33.
[19] Exhibit 7, page 7.

### 2. Plaintiff's poor performance *before* any alleged protected activity continued through to his termination.

Even assuming, *arguendo*, that PPG was aware that Plaintiff had engaged in protected activity, said activity was not a contributing factor in the termination decision for several reasons.

First, Plaintiff was underperforming – and PPG was actively managing that underperformance – at least as of December 2016 when he scored a 60 (Marginal) on his Market Walk. Exhibit 24. In that Market Walk, Plaintiff was reminded that he needs to update his training roster on every store visit, to ensure all Lowe's associates are accounted for and inputted correctly. *Id*. Mr. Moore also flagged that Plaintiff was not completing his Monthly Action Plans (MAPs). In March 2017, Plaintiff scored a 58 (Unsuccessful) on his Market Walk, at the conclusion of which he received a verbal warning and was advised he would have another Market Walk within 30-60 days.[20] *See* Exhibits 28, 29. During the March Market Walk, Mr. Moore again noted Plaintiff's training roster was incomplete and MAP objectives were not being completed. Exhibit 28. In the April 21, 2017 Market Walk, Plaintiff scored a 46 (Unsuccessful). Exhibit 40. Additionally, through the end of March 2017, Plaintiff had missed his sales target for 8 of the preceding 12 months. Exhibit 40.

Second, the performance deficiencies identified prior to any protected activity continued through to Plaintiff's termination. During the June Market Walk, Mr. Moore again noted Plaintiff's training roster was inaccurate, and that although Plaintiff had reported completing MAP objectives, the stores that were walked were at 0% compliance. Exhibit 56. During the final Market Walk in August, Mr. Moore noted multiple inconsistencies between Plaintiff's training roster and his TMS reports, which indicated Plaintiff was training associates in stores he was not even present at. Exhibit 70. Plaintiff acknowledged he had no evidence to dispute the inaccuracies Mr. Moore identified. T.R. April 25, 2025, Vol. II, 16:12-19:10. During his August

---

[20] T.R. April 25, 2025, Vol. I, 62:7-9; 63:16-22.

Market Walk, Plaintiff was not completing the MAP items. Exhibit 70. Moreover, as Plaintiff even acknowledged, as of August 31, 2017, he was reporting to Mr. Moore that he had not completed all of the National or Regional Sales objectives for a single store in his territory and had set no store objectives. Exhibit 259. As to his sales numbers, despite being told in the PIP that he would need to comp. positive for Q2, Plaintiff's April, May and June sales numbers remained below 100%. Exhibit 70.

Third, Mr. Moore's evaluation of Plaintiff remained consistent. With the exception of one category on the July Market Walk (i.e., after the protected activity) in scoring Market Walks, Mr. Moore either gave Plaintiff all the points in a particular category or no points. This was a consistent practice for Mr. Moore in how he scored Market Walks across all of his Territory Managers.

Finally, the death knell to Plaintiff's entire case: the decision to place Plaintiff on a Performance Improvement Plan begin in early April *before* any protected activity. Exhibit 38.

Taken together, the evidence confirms that no reasonable jury could conclude Plaintiff's alleged protected activity was a contributing factor in PPG's decision to terminate his employment. Accordingly, judgment as a matter of law should be entered in PPG's favor on Plaintiff's claim under Labor Code section 1102.5.

**B.    PPG Has Established by Clear and Convincing Evidence That, Notwithstanding Any Alleged Protected Activity, It Terminated Plaintiff for Legitimate, Independent Reasons.**

Plaintiff was placed on a Performance Improvement Plan with clear measurable objectives to achieve, and the evidence is undisputed that he failed to achieve them. He failed to maintain an accurate training roster. Exhibit 70. He failed to timely complete all National and Regional objectives by the end of each month. Exhibits 70, 259. He failed to score a successful Market Walk in either July or August. Exhibits 56, 70. And, he failed to achieve positive sales numbers for April, May and June 2017.

Exhibit 70.

PPG's progressive discipline of Plaintiff was consistent with how other Territory Managers were treated. When Michael Cordova and Kelly Munsterman's sales numbers showed no growth in 7 of the preceding 12 months, they were each issued a Written Coaching. Exhibits 266, 268. Both Mr. Cordova and Ms. Munsterman successfully increased their sales numbers and were not moved on to a Performance Improvement Plan. When Eduardo Marquez's sales numbers showed no growth in 6 of the preceding 12 months, he was issued a Written Coaching. Exhibit 270. However, when Mr. Marquez's sales numbers failed to improve during the following quarter, he was placed on a Performance Improvement Plan. Exhibit 271. Similar to Plaintiff's PIP, Mr. Marquez was advised that he needed to follow the Daily Action Plan, complete MAP objectives, and achieve a comp. positive in the next quarter. Unlike Plaintiff, Mr. Marquez successfully met the terms of the PIP.

The evidence is clear: PPG had legitimate, independent reasons for terminating Plaintiff's employment. Accordingly, judgment as a matter of law should be entered in PPG's favor on its affirmative defense.

### C. Plaintiff Has Not Established by a Preponderance of the Evidence that He was Terminated in Violation of Public Policy.

Piggybacking on his claim under Section 1102.5, Plaintiff also asserts a common law claim for wrongful termination in violation of public policy. For the reasons discussed above, judgment as a matter of law should be entered in PPG's favor on this claim. Plaintiff has not shown by a preponderance of the evidence that his alleged protected activity was a substantial motivating reason for his termination.

### D. Plaintiff Has Not Established by Clear and Convincing Evidence that He is Entitled to Punitive Damages.

To recover punitive damages against an employer, a plaintiff must demonstrate by clear and convincing evidence that an officer, director or managing agent of the employer acted with oppression, fraud, or malice, or that such individual ratified that

conduct. Cal. Civ. Code § 3294. As Plaintiff failed to prove any of these elements, he is not entitled to punitive damages.

### 1. No One Employed by PPG Acted With Malice, Oppression, Or Fraud In Terminating Mr. Lawson's Employment.

"Oppression" is defined as "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights." *Id*. § 3294(c)(2). "Malice" is defined as "conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." *Id*. § 3294(c)(1). "Despicable conduct" refers to "conduct which is so vile, base, contemptible, miserable, wretched or loathsome that it would be looked down upon and despised by ordinary decent people." *Tomaselli v. Transamerica Ins. Co.*, 31 Cal. Rptr. 2d 433, 444 (Ct. App. 1994). Fraud is the "intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury." *Id*. § 3294(c)(3).

There is no evidence of such conduct in this case as Plaintiff was terminated from his employment for repeatedly failing to perform the most essential duties of his job as a TM. Plaintiff was placed on a PIP in an attempt to help improve his performance and, even though the deadline to comply with his PIP was extended by Defendant, he still failed and was therefore subsequently terminated.

None of the witnesses testified that any conduct by Defendant's managers rose to the level of "malice" (intent to injure), "oppression" (conscious disregard of rights), or "fraud" (intent to deceive). Mr. Moore had no retaliatory intent toward Plaintiff and simply held Plaintiff accountable for meeting well-established performance standards. Mr. Moore and Mr. Mayhew consistently testified that Plaintiff's termination was based on legitimate, documented performance deficiencies.

The evidence which Plaintiff introduced does not support his underlying claims,

let alone satisfy the standard for egregiousness to support punitive damages. The record is entirely devoid of any extreme comments or actions by any Defendant's employees as it relates to Plaintiff's termination. As such, no conduct attributable to Defendant rises to the level of clear and convincing evidence of extreme conduct required for an award of punitive damages. *Mathieu v. Norrell Corp.*, 115 Cal.App.4th 1174, 1191 (2004).

### 2. No Managing Agent Was Involved in the Alleged Conduct.

Plaintiff has not identified any officer, director, or managing agent responsible for the decision to terminate Plaintiff. There is no evidence that the individuals who were involved in the decision to terminate Plaintiff were officers, directors, or managing agents of Defendant.

A corporate employer will be liable for punitive damages based on the acts of an employee only if an "officer, director, or managing agent" (1) "had advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others[,]" or (2) "ratified the wrongful conduct for which the damages are awarded[,]" or (3) "was personally guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294(b). California law thereby avoids imposing liability for punitive damages on a corporation "for malice of low-level employees which does not reflect the corporate 'state of mind' or the intentions of corporate leaders." *Cruz v. HomeBase*, 99 Cal. Rptr. 2d 435, 439 (Ct. App. 2000).

Employees who "exercise substantial discretionary authority over decisions that ultimately determine corporate policy" qualify as "managing agents." *Id.* at 440 (internal quotations, alteration, and citation omitted) (emphasis in original). "Corporate policy" refers to "the general principles which guide a corporation, or rules intended to be followed consistently over time in corporate operations." *Id.* Mere ability to hire and fire employees does not render a supervisory employee a managing agent. *White v. Ultramar, Inc.,* 21 Cal. 4th 563, 566, (1999) (holding a plaintiff's supervisor was not a managing agent, even though the supervisor was the highest-

ranking employee in Southern California, because he did not have authority to establish or change corporate policy). A plaintiff must show by clear and convincing evidence that an employee qualifies as a "managing agent." *Barton v. Alexander Hamilton Life Ins. Co. of Am.*, 3 Cal. Rptr. 3d 258, 261 (Ct. App. 2003).

Even if it is found that Mr. Moore, Mr. Mayhew and Mr. Kascir terminated Plaintiff due to retaliatory animus (which they did not), they are not managing agents of Defendant nor is there an officer, director, or managing agent who ratified their conduct. Former Director of Home Center, Field Sales and Strategic Accounts, Cathrine McKinley's title of "director" places her well below the policy-making level of the corporate hierarchy. The evidence shows that Ms. McKinley did not meet the definition of a managing agent, as Ms. McKinley's authority was limited to a particular group of field employees Territory, Regional Sales, and Divisional Managers who supported Defendant's business for the Home Depot, Lowe's, and Menards, and not affecting larger corporate policy. Dkt. 155-7, at 6:16 – 7:12. More importantly, not only was Ms. McKinley not involved in the decision to terminate Plaintiff, but there is also no evidence that she was involved in making decisions related to corporate policy. As such, Ms. McKinley was not a managing agent for Defendant, and Plaintiff's claim for punitive damages will fail. *Kelly-Zurian v. Wohl Shoe Co.*, 22 Cal. App. 4th 397, 421-22 (1994).

Beyond the lack of any egregious conduct attributable to a managing agent, the California Supreme Court has held that an employer's written policy specifically forbidding the unlawful conduct at issue "may operate to limit corporate liability for punitive damages, as long as the employer implements the written policy in good faith." *Ultramar*, 21 Cal. 4th at 568, fn. 2; *see Kolstad v. American Dental Ass'n*, 527 U.S. 526, 541-43 (1999) (employer's adoption and implementation of written policy against workplace discrimination may shield it from punitive damages liability for discriminatory acts by its managers). Here, Defendant maintained a Global Code of Ethics, that expressly forbid unlawful retaliation, as well as policies and procedures

for reporting and investigating any such unlawful retaliation. *See* Exhibit 7, at 7. The undisputed evidence introduced at trial also established that PPG trained its employees on the policy, promptly investigated Plaintiff's anonymous complaint, and took corrective action following its investigation.

### 3. Plaintiff Cannot Recover Punitive Damages Based On Conduct Not Directed Towards Him.

California law is clear that in order to recover punitive damages, the plaintiff must establish that the defendant acted with "oppression, fraud, or malice" specifically directed toward the plaintiff, and not merely toward third parties. Cal. Civ. Code § 3294(a). Section 3294 requires that the wrongful conduct — whether it be malice, oppression, or fraud — be "with respect to the plaintiff," meaning the misconduct must have been committed against the plaintiff personally. California courts have repeatedly emphasized this principle, holding that "'[p]unitive damages are proper only when the tortious conduct rises to levels of extreme indifference to **the plaintiff's** rights, a level which decent citizens should not have to tolerate.'" *Lackner v. North*, 135 Cal.App.4th 1188, 1210-1212 (2006) citing *Tomaselli v. Transamerica Ins. Co.,* 25 Cal.App.4th 1269, 1287 (1994). Emphasis added. Consequently, punitive damages are not recoverable where the alleged fraud or malicious conduct was directed solely at third parties rather than the plaintiff himself. Accordingly, Plaintiff cannot use some alleged scheme to defraud Lowe's as the basis for his claim for punitive damages – nor was there even evidence offered at this trial of any ***actual*** financial loss by or material misrepresentations made to Lowe's.[21]

## III. CONCLUSION

Based upon the foregoing, Defendant requests that the Court enter Judgment as a Matter of Law in PPG's favor on Plaintiff's two remaining claims for Violation of Labor Code section 1102.5 and Wrongful Termination in Violation of Public Policy.

---

[21] Nor has Plaintiff offered evidence of an officer, director or managing agent of Defendant who participated in any alleged fraud against Lowe's.

Dated: April 30, 2025

*s/ Miko Sargizian*
THEODORE A. SCHROEDER
MIKO SARGIZIAN
LITTLER MENDELSON, P.C.
Attorneys for Defendant
PPG ARCHITECTURAL FINISHES, INC.

Dated: April 30, 2025

*s/ Karin M. Cogbill*
KARIN M. COGBILL
JACKSON LEWIS, P.C.
Attorneys for Defendant
PPG ARCHITECTURAL FINISHES, INC.

4919-2177-6188, v. 1