Bruce C. Fox (*pro hac vice*)
bruce.fox@obermayer.com
D. McArdle Booker (*pro hac vice*)
mcardle.booker@obermayer.com
OBERMAYER REBMANN MAXWELL & HIPPEL LLP
525 William Penn Place, Suite 1710
Pittsburgh, PA 15219
Tel: (412) 566-1500
Fax: (412) 281-1530

Chaka Okadigbo (CA State Bar No. 224547)
cokadigbo@hkm.com
HKM EMPLOYMENT ATTORNEYS LLP
700 S. Flower Street, Suite 1067
Los Angeles, California 90017
Telephone/Facsimile: (213) 431-6209

*Attorneys for Plaintiff Wallen Lawson*

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION**

| | |
|---|---|
| WALLEN LAWSON<br><br>*Plaintiff,*<br><br>v.<br><br>PPG ARCHITECTURAL FINISHES, INC<br><br>*Defendant.* | Case No.: 8:18-CV-00705 JVS-JPR<br><br>**PLAINTIFF'S PETITION FOR AWARD OF REASONABLE ATTORNEY'S FEES AND COSTS** |

## I.     INTRODUCTION

Plaintiff Wally Lawson, following victory at trial on his whistleblower retaliation claims after more than seven years of litigation including two appeals to the U.S. Court of Appeals for the Ninth Circuit with a question certified to the Supreme Court of California, petitions for an award of reasonable attorney's fees and costs under Cal. Labor Code § 1102.5(j) and Cal. Civil Code § 1021.5. As detailed below, Lawson is entitled to a fully compensatory award of fees and costs because of his complete success in this litigation and his service to whistleblowers in the State of California. His

counsel's billing, as well as requested hourly rates and expenditure of costs, are reasonable in light of the protracted trajectory of this case. Indeed, in order to ensure that the fee request is conservative and tightly tied to the case as it developed, Obermayer Rebmann Maxwell & Hippel wrote off entries to the tune of $733,597, 23% of the total amount billed, while HKM Employment Lawyers also wrote off significant amounts of time.

## II.     HISTORY OF THIS LITIGATION

After being fired in retaliation for whistleblowing on September 6, 2017, seven and a half years ago, Wallen Lawson filed this action on April 25, 2018. ECF # 1. Following over eighty pages of briefing (over six hundred pages including all attachments), this Court granted summary judgment on June 26, 2019. ECF ## 57, 58, 59, 64. Lawson appealed the grant of summary judgment, and after over 150 pages of briefing, the filing of nearly seven hundred pages of record, and oral argument, the Ninth Circuit certified the case to the Supreme Court of California. *Lawson v. PPG*, Docket # 19-55802, ECF ## 20, 21, 25, 26, 44, 56; *Lawson v PPG*, 982 F.3d 752 (9th Cir. 2020).

The parties briefed the summary judgment grant yet again before the California Supreme Court, which made very clear that the District Court had misapplied California law and returned the case to the 9th Circuit, which vacated the grant of summary judgment and remanded the case to the District Court. *Lawson v. PPG*, 12 Cal. 5th 703 (2022); ECF ## 76, 77. After more than two years of appellate proceedings, Lawson returned to this Court ready to put his case before a jury of his peers.

Following remand, however, PPG renewed its demand for summary judgment, and another round of summary judgment briefing followed with more than a hundred additional pages of briefing, almost forty pages of statements of facts and conclusions, and hundreds of pages of factual materials. ECV ## 92, 94, 95, 99. This Court again granted summary judgment and Lawson again appealed. ECF ## 101, 102. Summary judgment was again briefed before the Ninth Circuit to the tune of an additional 162 pages (accompanied by 560 pages of record), again the Circuit heard oral argument, and again the

Circuit reversed and remanded the case back to the District Court. *Lawson v. PPG*, Docket # 22-56114, ECF ## 6, 7, 13, 14, 20, 31, 32; *Lawson v. PPG*, 2020 U.S.App. LEXIS 16096 (July 2, 2024); ECF # 105.

Significant motions practice preceded the trial in this matter, including three motions in limine filed by PPG (Lawson filed none) and PPG efforts to present witnesses remotely. ECF ##126, 127, 128, 132, 139, 140, 143, 160, 164, 176, 179, 180. Additionally, the Court ordered mediation, which the parties conducted, to no avail. ECF ## 129, 129, 130, 131, 138.

On April 22, 2025, almost seven years to the day after this action was originally filed and following three trips to appellate courts in San Francisco, a jury was empaneled and the trial began. ECF # 170. Eight days later, the jury determined that Lawson was terminated in violation of California Labor Code § 1102.5, and in violation of public policy. ECF # 195. It awarded Lawson $2,020,000 in damages. ECF # 195.

Lawson now applies to this Court for an award of attorney's fees and costs. There are at least two statutory bases for this award, which is not only appropriate, but necessary to ensure that whistleblowers like Lawson are able to secure counsel through what this case shows can be a protracted, arduous, and complex litigation process.

**III.   LEGAL STANDARD**

The jury in this case found that PPG had violated California Labor Code Section 1102.5 and awarded damages for that violation. "The court is authorized to award reasonable attorney's fees to a plaintiff who brings a successful action for a violation of these provisions." Cal.Lab.Code § 1102.5(j). Subsection j of Section 1102.5 was effective from January 1, 2021. Cal.Lab.Code § 1102.5, History and Notes.

However, separately and independently from Labor Code § 1102.5, the Court is also authorized to award attorney fees pursuant to California Civil Code § 1021.5, which provides:

> Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any.

### IV. LAWSON'S STATUTORY ENTITLEMENT TO AN AWARD OF FEES AND COSTS

*1. California Labor Code § 1102.5(j) calls for a fee award in this matter even though it has taken so long to litigate*

Based on discussions with counsel, Lawson expects that PPG will argue that an attorney fee award is not available on the theory that Labor Code § 1102.5(j) was not enacted by the California legislature until after it wrongfully terminated Lawson, or because it was not enacted until after this action was filed. This argument, however, is clearly contrary to California law and should not be credited.

The Court of Appeals for the Second District of California, for example, held: "We conclude the statute authorizes an award of attorney fees to Winston because his action was pending when section 1102.5, subdivision (j), became effective," and remanded to the trial court for an award of fees. *Winston v. County of Los Angeles*, 107 Cal. App. 5th 402, 412 (Cal.2d.Ct.App. 2024) ("*Winston*"). It is neither novel nor unusual for statutes regarding costs to be treated in this way under California law.

In *Stockton Theaters Inc. v. Palermo*, for example, the California Supreme Court made clear in no uncertain terms that costs attributed to a party would be set based on the statute in effect *at the time of the decision that allows the costs*, not when the matter was filed or any other time. 47 Cal. 2d 469, 477 (1956), *citing Hogan* v. *Ingold*, 38 Cal.2d 802, 814 (1952) ("The general rule is thus stated

in 7 California Jurisprudence 305, § 43: '[Costs] are given only by statutory direction and their allowance depends on the terms of the statute in force at the time of the accrual of the right to have them taxed. This time, in regard to costs on appeal, is the time of the rendition of the judgment on appeal. It follows that the rule pertaining to the allowance of costs may be changed or modified by statute during the pendency of the proceeding.'"). Indeed, in *Stockton Theaters* the cost-shifting statute did not go into effect until the matter was already on appeal but the California Supreme Court nevertheless upheld the right of the fee-seeking prevailing party to recoup costs. *Id*.

While *Stockton Theaters* dealt with costs, but not attorney fees specifically, more than two decades later the California Supreme Court made clear that the *Stockton Theaters* principle applied to attorney fees as well as other costs. This was in the context of Section 1021.5 of the Code of Civil Procedure, which is a separate independent basis for fees in this case also (see *supra* at IV(2)). *Woodland Hills Residents Assn, Inc. v. City Council*, 23 Cal. 3d 917 (1979). As with *Stockton Theaters*, *Woodland Hills* was on appeal at the time the fee-shifting statute became effective. *Id*. at 925. Indeed, Section 1021.5 became effective *after the trial court had already denied a fee request*, and the California Supreme Court reversed based on the subsequent enactment and remanded to the trial court for a fee award. *Id*. at 925, 928-929.

This principle does not only apply when it benefits the prevailing party. To the contrary, it is a neutral principle of application of procedural law, and has also been applied to limit the recovery of attorney fees when the California legislature has tightened requirements during the pendency of an action. *See USS-Posco Industries v. Case*, 244 Cal. App. 4th 197, 222 (Cal.1st. Dist.Ct.App. 2016).

In *Erhart v. BofI Fed. Bank*, the U.S. District Court for the Southern District of California agreed. 2023 U.S. Dist. LEXIS 174639 at *9-10 (S.D.Ca. Sept. 28, 2023), *citing Stockton Theaters*, *Woodland Hills*, and *USS-Posco* (*Erhart* predates the decision of the Court of Appeals in *Winston*). The *Erhart* Court simply and clearly stated: "The statute authorizes an award of attorneys' fees to

5

Erhart because this action was pending when section 1102.5(j) became effective." *Id*. at *11.

None of these cases indicated that prejudice to the defendant was determinative or even an important consideration, but in the event PPG claims it is prejudiced by a fee award because it was not aware such an award – at least under Section 1102.5(j) – might be available, the history of this case belies that claim. The California Legislature passed 1102.5(j) in 2020, It was signed into law in September, 2020 and it went into effect in January, 2021. 2020 Cal. AB 1947. Facing the likelihood of an attorney fee award if PPG lost its case before a jury, PPG nonetheless continued through the California Supreme Court (where it lost), another round of summary judgment, another trip to the Ninth Circuit (where it lost), and a jury trial (where it again lost). More than four years of litigation, and most of the costs involved here, occurred between the passage of Section 1102.5(j) and the conclusion of the trial. PPG pursued this case all that time with the knowledge that, if it did not prevail, it could face a fee award.  All of the governing legal research has also been readily available to PPG's counsel, who are all highly competent attorneys from a national employment law defense firm.

Two outlier cases in this District did not award fees under 1102.5(j) in 2022, but both precede *Winston* and *Erhart* and both are, their face, based on a failure to cite authority to support application of Section 1102.5(j) to actions pending at the time of enactment. *Nikmanesh v. Wal-Mart Stores, Inc.*, SACV 15-202, 2022 U.S. Dist. LEXIS 109065 at *46 (C.D. Cal. Feb. 25, 2022) ("*Nikmanesh I*"); *Bahra v. Cnty. of San Bernardino*, No. EDCV 16-1756, 2022 U.S. Dist. LEXIS 162519, *15 (C.D. Cal. Sept. 7, 2022) ("*Bahra I*"). Neither case offers much in the way of analysis, beyond a general statement that insufficient authority had been cited. These decisions do not make clear whether this was a failure of briefing or a lack of cases on point, but either way, in the wake of *Winston* and *Erhart*, it is no longer tenable for a litigant to argue that insufficient authority exists for the application of Section 1102.5(j) to cases pending at the time of its enactment.

The context of these two cases also calls their authority into question. *Nikmanesh* seems to be

based on at least a partial misreading of the trial court's own prior Order. The Order there denying the fee petition claims to do so because entitlement to fees had already been decided in a prior ruling on a motion to amend. *Nikmanesh I*, SACV 15-202, 2022 U.S. Dist. LEXIS 109065 at *46. The prior ruling, however, denied the motion to amend primarily based on timeliness. *Nikmanesh v. Wal-Mart Stores, Inc.*, SACV 15-202, 2021 U.S. Dist. LEXIS 200456 at *12 (C.D.Ca. Aug. 16, 2021) ("*Nikmanesh II*").

*Bahra*, meanwhile, was affirmed by the Ninth Circuit, but it *specifically declined to address the Section 1102.5(j) issue. Bahra v. Cty. of San Bernardino*, No. EDCV 16-1756, 2023 U.S. App. LEXIS 31262 at *4 fn. 2 (9th Cir. Nov. 27, 2023) ("*Bahra II*"). It was not necessary to address the issue because the trial court had already awarded attorney fees to the whistleblower in that case pursuant to Section 1021.5 of the Code of Civil Procedure and the Circuit affirmed that award. *Bahra I* at *19; *Bahra II* at *4. Additionally, the fact that a California appellate court interpreting California law, in *Winston*, held that attorneys' fees under Labor Code § 1102.5(j) are recoverable because that statutory section was enacted into law during the pendency of the case at bar is not only persuasive but positions *Erhart* and *USS-Posco Industries* as more authoritative than *Nikmanesh* and *Bahra*, again, neither of which addressed the issue of attorneys' fees under Labor Code § 1102.5 as previously discussed above.

### 2. California Civil Code §1021.5 independently requires a fee award

Lawson is also entitled to attorneys' fees under Civil Code § 1021.5. A fees award under this code section is authorized based on three criteria -(1) that the action have conferred a benefit on the public or a large class of persons, (2) that private enforcement of the plaintiff's claims was necessary, and (3) such fees should not in the interests of justice be paid out of the recovery, if any. Cal. Civ. Code §1021.5.

*Bahra I* is instructive regarding the application of Civil Code § 1021.5 to whistleblower claims. As to the first element – that the action confer a benefit on the public or a large class of persons – the

7

*Bahra I* Court noted that in addition to the general benefit of whistleblower litigation, the "litigation also conveyed a significant benefit on future whistleblowers in creating Ninth Circuit precedent on the impact of an unfavorable civil service hearing on a whistleblower's ability to bring a civil action in federal court." *Bahra I* at 16.

Similarly, this case conveyed a significant benefit on future whistleblowers, by creating precedent not only in the Ninth Circuit but also in California state courts clarifying the standard for 1102.5 claims and the available defenses. *Lawson v. PPG*, 12 Cal. 5th 703 (2022).

The second prong, relating to the necessity of private enforcement, as well as the imbalance between the cost of enforcement and the value of recovery in the case, is addressed at some length in *Bahra I*, and the vital points are notably similar to this case. Explaining why the case before it merited a fee award under Section 1021.5, the *Bahra I* court explained:

> As discussed above, Mr. Bahra's action provides a significant benefit to the public. There is also evidence that private enforcement of his claim was necessary, given his unfavorable civil service hearing outcome, which, at the time, likely weighed against the probability of a successful outcome. At the time of filing, Mr. Bahra suffered $158,561.00 in damages and the case was expected to cost $50,000 to $75,000 to bring to trial. The action also had a low probability of success: the Court granted Defendants' motion for summary judgment and dismissed Mr. Bahra's action. On appeal, the Ninth Circuit reversed in relevant part and remanded the action on the single cause of action that went to trial. Although Mr. Bahra's action was ultimately successful, the litigation chronology did not bear indications of a successful outcome at summary judgment, and the likelihood of a favorable Ninth Circuit decision could not have been predicted. Mr. Bahra requests attorney's fees and costs in the amount of $1,218,910.00. The individual stakes were relatively low in comparison to the costs of litigation, which continued for six years. The Court finds that the financial burden requirement is met.

*Bahra I* at *18-19.

Like Bahra, Lawson was without other options for addressing the wrongs done to him by his employer. Indeed, Lawson had to be even more reliant on privately enforcing his claim than *Bahra* given that the civil service commission was not available to Lawson. Also like Bahra, it would have

been impossible to predict that Lawson would be forced to devote such enormous time and effort to pursuing his claim to conclusion. Bahra was forced to take his case to the Ninth Circuit after the District Court granted summary judgment against him: Lawson did so twice, which, by extension, also necessitated a trip to the California Supreme Court. Similarly, the fees and costs here, as with Mr. Bahra, ultimately exceeded the amount in damages awarded by the jury. The jury awarded $2,020,000 whereas the fees and costs sought in Plaintiff's fee petition amount to $2,881,005.29.

Finally, *Bahra I* found that a whistleblower action "is precisely the "sort" of public interest litigation that section 1021.5 intended to encourage." *Bahra I* at *19, *quoting Woodland Hills*, 23 Cal. 3d at 933. The underlying rationale for the enactment of Section 1021.5 by the California Legislature is that fees should be available when public policy is implicated: "The doctrine rests upon the recognition that privately initiated lawsuits are often essential to the effectuation of the fundamental public policies embodied in constitutional or statutory provisions, and that, without some mechanism authorizing the award of attorney fees, private actions to enforce such important public policies will as a practical matter frequently be infeasible." *Woodland Hills*, 23 Cal. 3d at 933.

Here, there is no question that public policy is implicated. The jury found that PPG violated public policy by terminating Lawson. ECF # 195. This is not an allegation, or a claim subject to dispute. It is an adjudicated fact.

Finally, as to the interests of justice, the jury awarded Lawson twenty thousand dollars for his lost wages and two million dollars for his emotional distress. The cost of pursuing the case, because of the length, the multiple appeals, the important legal questions resolved, and PPG's aggressive litigation positions, was nearly three million dollars (really, it was more, but Lawson has been extremely conservative in preparing this petition). It would not only be unjust and inequitable to require Lawson to pay these costs out of the recovery aimed at making him whole, but it would also be impossible.

California law is clear: Lawson is entitled to an award of fees and costs under both California Labor Code 1102.5(j) and Code of Civil Procedure 1021.5. The only remaining task is to determine what is the appropriate amount of a fee award.

### IV.     **THE EFFORT EXPENDED BY LAWSON'S COUNSEL IS REASONABLE**

The amount of fees and costs incurred in this matter is significant, but appropriate to the complexity of the matter, especially given the need for multiple rounds of appellate briefing and a jury trial to reach a successful conclusion. There are three buckets of recoverable costs: attorney fees, expert fees, and miscellaneous costs.

For nearly fifty years, the "lodestar" method has been used to determine attorney fee awards in California. *Serrano v. Priest*, 20 Cal. 3d 25, 48-49 (1977). Under this method, while fee awards can be revised upward or downward in extraordinary circumstances, the primary consideration is "a careful compilation of the time spent and reasonable hourly compensation of each attorney and certified law student involved in the presentation of the case." *Id*. at 48. In embracing this method, the California Supreme Court explicitly adopted the statement of the Second Circuit: ""The starting point of every fee award, once it is recognized that the court's role in equity is to provide just compensation for the attorney, must be a calculation of the attorney's services in terms of the time he has expended on the case. Anchoring the analysis to this concept is the only way of approaching the problem that can claim objectivity, a claim which is obviously vital to the prestige of the bar and the courts." *Id*. at fn. 23; *quoting City of Detroit* v. *Grinnell Corp*., 495 F.2d 448, 470,(2d Cir. 1974). Thus, subject to minor equitable adjustments and unless the legislature has required the use of some other method, all fee awards granted under California law, as the award here must be, should be determined by multiplying a reasonable hourly rate by the reasonable time spent by the attorneys on the case. *Meister v. Regents of the Univ. of Ca.*, 67 Cal. App. 4th 437, 448-449 (Cal.6th Dist.Ct.App. 1998).

While the fees should be awarded here under California law, federal law also looks primarily

to the lodestar calculation to determine attorney fees. *Perdue v. Kenny A.*, 559 U.S. 542, 546 (2010) (upholding the lodestar fee award but finding insufficiently extraordinary circumstances to significantly adjust it); *Lindy Bros. Builders v. Am. Radiator and Standard Sanitary Corp.*, 487 F.2d 161, 167 (3d.Cir. 1973); *Edmo v. Corizon, Inc.*, 97 F.4th 1165, 1160 (9th.Cir. 2024) ("To calculate attorneys' fees, courts in the Ninth Circuit use the two-step 'lodestar method.' The first step is to determine the presumptive lodestar figure. The court begins by tallying the number of hours an attorney reasonably expended on the prevailing party's case. The court then multiplies the number of hours by a reasonable hourly rate, based on evidence of the market rate for the services provided. The result of this equation is the lodestar figure, which is treated as a presumptively reasonable award" (cleaned up)).

In this case, the attorneys working on the case kept detailed hourly records of their work. Exhibit 1, Declaration of Andrew Horowitz, ¶¶ 5, Ex. A; Exhibit 2, Declaration of Chaka Okadigbo ¶¶ 13-16, Ex. A. Obermayer, in particular, has written off or discounted a significant number of entries to ensure that only the most necessary work is included in the final fee petition. Exhibit 1, ¶¶ 6-10, Ex. A. HKM has also written off over 12 percent of its entries in an effort to be conservative and modest in its seeking of attorneys' fees, which time HKM has excluded from the billing entries altogether. Exhibit 2, ¶¶ 13, Ex. A.

An award of attorney fees includes not only the billable time of licensed attorneys, but also others necessary to legal work:

> Clearly, a "reasonable attorney's fee" cannot have been meant to compensate only work performed personally by members of the bar. Rather, the term must refer to a reasonable fee for the work product of an attorney. Thus, the fee must take into account the work not only of attorneys, but also of secretaries, messengers, librarians, janitors, and others whose labor contributes to the work product for which an attorney bills her client; and it must also take account of other expenses and profit.

*Missouri v. Jenkins*, 491 U.S. 274, 285 (1989). Other expenses like travel, courier, copying,

computerized research, and other non-taxable costs are also recoverable as attorney fees. *Grove v. Wells Fargo Fin. Cal., Inc.*, 606 F.3d 577, 580-582 (9th.Cir. 2010). Among the non-lawyer members of the litigation and trial team are paralegal Amie Fraenig and jury consultant trial technician Darryl Exline, of TrialQuest. Exhibit 3, Declaration of Bruce Fox, ¶¶ 7-9, Ex. A, TrialQuest invoice. Mason was central to the success of the trial team, through analysis of the jury pool and recommendations on jury selection. Exhibit 3, ¶ 8. Exline, meanwhile, was necessary to the smooth presentation of evidence in a case where, because of the unusually long time this case remained pending, most testimony had to be presented by deposition video. Exhibit 3, ¶.9. Mason and Exline, while not direct employees of either Obermayer or HKM, were members of the trial team, and were covered by the attorney client privilege and the work product privilege. *Hynix Semiconductor, Inc. v. Rambus Inc.*, 2008 U.S. Dist. LEXIS 109955 at *24 (N.D.Ca. Feb. 10, 2008). Jury consultants are listed among paralegals, law students, and other service providers in the Ninth Circuit list of presumptive rates as determined by the District in the context of the Criminal Justice Act – where the inclusion of such non-testifying professionals alongside testifying experts indicates that these listed professionals are essential to a modern trial just as much as testifying experts. Ninth Circuit Criminal Justice Act Policies and Procedures, Appendix 2.

Obermayer's invoices were further significantly written down to ensure that only absolutely necessary work is included in the request for fees here. Exhibit 1, ¶¶ 4, 7. Ultimately, close to twenty-five percent of hours and twenty-three percent of the value of seven years of invoices was written off for this purpose. Exhibit F, ¶¶ 4, 7. While the long and complex nature of this matter may make the fees seem high in comparison to other employment cases, the time reported is in fact a lean version of the time necessary for a case of this complexity.

These attorney billing records have been reviewed by Grant Stiefel, an expert in attorney fee awards, who found them to have all the indicia of reliability which courts consider in awarding

12

attorney fees. Exhibit 4, Declaration of Grant Stiefel, ¶¶ 37-49. These indicia include detailed time entries, entered contemporaneously with the work done, entered in one-tenth of an hour increments, without including charges for overhead or administration. Exhibit 4, ¶¶ 44-49. Stiefel also notes that counsel discounted the fees significantly here, and opines that this is a "voluntary exercise of billing judgment" that supports the reasonableness of the hours claimed. Exhibit 4, ¶¶ 50-51.

## V.     THE HOURLY RATES REQUESTED BY LAWSON'S COUNSEL ARE REASONABLE

According to attorney fee expert Grant Stiefel, whose recommendations have been adopted by numerous courts, including over a dozen courts applying California law, the median rate for a litigation partner in Los Angeles County in 2024 is $895 per hour and the third quartile rate was $1,268 per hour. Exhibit 4, ¶ 57, 75. The median rate for associates in 2024, meanwhile, was $713 per hour and the third quartile rate was $946 per hour. Exhibit 4 ¶ 66. Stiefel came to this conclusion by consulting the Real Rate Report, which is commonly used in the Central District of California to determine reasonable attorney rates. Exhibit 4, ¶¶ 54-55, Ex. D.

The rates of the Obermayer attorneys in this matter, along with their time billed and totals, were as follows:

| Attorney | Rate per hour | Hours | Total |
|---|---|---|---|
| Bruce Fox | $1,100 | 1,219.10 | $1,341,010.00 |
| Andrew Horowitz (as Partner)Mamta Ahluwalia | $700 | 210.30 | $147,210.00 |
| Andrew Horowitz (as Associate | $550 | 506.20 | $278,410.00 |
| McArdle Booker | $700 | 322.30 | $225,610.00 |
| Jeffrey Cadle | $700 | 46.90 | $32,830.00 |
| Salena Moran | $450 | 379.20 | $170,640.00 |
| Hugh McKeegan | $650 | 221.50 | $143,975.00 |

13

| Qiwei Chen | $550 | 127.40 | $70,070.00 |
| Totals | | | **$2,409,575.00** |

Exhibit 1, Ex. A; Exhibit 4, ¶¶ 59-68. The rates of the HKM attorneys are:

| **Attorney** | **Rate per hour** | **Hours** | **Total** |
|---|---|---|---|
| Chaka Okadigbo | $895 | 168.7 plus 5 hours associated with work on fee petition and declaration), bringing total to **173.7** hours | $155,461.50 |
| Mamta Ahluwalia | $795 | 124.2 | $98,739.00 |
| **Totals** | | | **$254,200.50** |

Exhibit 2, ¶ 14-16, Ex. A; Exhibit 4, ¶¶ 61-65.

In addition to attorneys, the legal team included paralegal Amie Fraenig, who is billed at $220 per hour and billed a total of **$29,062.00**; The Real Rate Report notes the median national paralegal rate is $229 per hour with a third quartile rate of $340 per hour. Also members of the team are jury consultant Carrie Mason, who bills at $600 per hour and billed a total of **$1,350** for her services and trial technician Darryl Exline, who bills from $75-255 per hour, depending on the task being performed, and billed a total of **$38,298.90**. Exhibit 3, Ex. A.

Mr. Stiefel considered the Updated Laffey Matrix, which has also been used by Courts regularly to determine reasonable market rates, and found that the rates charged were below the Laffey Matrix rates. Exhibit 4, ¶¶ 70-74, Ex. E. Sometimes they were well below. For example, if the Updated Laffey Matrix rate for 2024-2025 had been applied to McArdle Booker, his total billing would have been almost forty-five thousand dollars higher than sought in this petition. Exhibit 1, Ex. A; Exhibit 4 ¶ 68(b), Ex. E.

The Court may also apply a multiplier to increase fee amounts when circumstances would make it equitable to do so. Courts should consider increases to the amount indicated by the lodestar based on a twelve-point test:

14

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Edmo*, 97 F.4th at 1168, *quoting Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).

In this case, multiple appeals led to a significant clarification in California law in favor of whistleblowers, instituting a test that fulfils the purposes of the legislature while also making it much easier for whistleblowers to recover damages after an instance of retaliation. *Lawson v. PPG*, 12 Cal. 5th 703 (2022). In the relatively short time since, the California Supreme Court decision has been cited nearly two hundred times by California Courts (including in two subsequent Supreme Court cases), five times by the Ninth Circuit, not counting the subsequent *Lawson* cases, sixty-seven times by the U.S. District Courts in California, and by U.S. District Courts in Massachusetts and Minnesota. *See e.g. People ex rel. Garcia-Brower v. Krolla's, Inc.*, 14 Cal.5th 719, 723 (2023) (noting the "broad public policy interest in encouraging workplace whistleblowers to report unlawful acts without fearing retaliation" – the same policy, of course, that requires a fee award here); *Joseph v. Cal. Dep't of Corrections*, 2022 Cal. LEXIS 2450 (April 27, 2022) (remanding matter to Court of Appeal for reconsideration in light of *Lawson*); *Killgore v. SpecPro.Servs., LLC*, 51 F.4th 973, 982-983, 984-986 (9th.Cir. 2022) (discussing the California Supreme Court decision in *Lawson* at length, including a subsequent case interpreting *Lawson*, to conclude that the California Whistleblower Act has a "broad remedial purpose" and reversing a grant of summary judgment against a whistleblower on those grounds); *Erhart v. Bofi Fed. Bank*, 2020 U.S. App. LEXIS 2719 at *2 fn. 3 (9th.Cir. Feb. 6, 2025); *Stoll v. JBS USA Food Co.*, 2024 U.S. App. LEXIS 32348 at *2 (9th.Cir. Dec. 18, 2024); *Winns v. Exela Enter. Sols., Inc.*, 2023 U.S.App. LEXIS 201173 at *3 (9th.Cir. Aug. 4, 2023); *Tandon v. GN*

*Audio USA, Inc.*, 2022 U.S. App. LEXIS 11156 at *5 (9th.Cir. April 25, 2022).

This is a notable accomplishment of significant complexity and the very fact of making new law proves the novelty of the issues.

The attorneys in this case also put other work to the side in the long and complex process of litigating this case. Obermayer in particular brought in outside counsel to assist in two other large cases, thus splitting the entitlement to fees there with others: in one case hourly, in the other a possible large future award. Exhibit 3, ¶ 6.

No fixed fee was available in this case: Lawson was in no position to pay hourly after his retaliatory firing, and all recovery was always contingent upon success, for counsel as well as for Lawson himself.

The Court, having observed a successful trial, may make its own determination regarding the ability and reputation of counsel, but the experience of counsel with pursuing employment claims against PPG is manifest – Bruce Fox in particular has over twenty years of experience bringing these kinds of actions. Exhibit 4, ¶4. It is unlikely there is a lawyer in practice with more experience in this area.

As far as results, in this matter the jury verdict awarded over two million dollars on a matter where two different judges had previously granted summary judgment in full to the Defendant. That is, frankly, an extraordinary result.

Lawson is not requesting an enhancement here. But the many factors that would support such an enhancement only underline how fair and reasonable the application being made for fees here is. The work was necessary. The rates are market rates. And the results speak for themselves.

**VI.**    **THE COSTS EXPENDED BY LAWSON'S COUNSEL ARE REASONABLE**

As explained *infra*, binding precedent is clear that attorney fees, for the purpose of a fee award, are not limited to the time of attorneys at a reasonable market rate, but also include the work of others,

16

including work that is not done directly by law firm employees or costs that are not directly employee time. *Jenkins*, 491 U.S. at 285; *Grove*, 606 F.3d at 580-582. These include "the work not only of attorneys, but also of secretaries, messengers, librarians, janitors, and others whose labor contributes to the work product for which an attorney bills her client," as well as " travel, courier, copying, computerized research, and other non-taxable costs." *Id*. These are necessarily parts of any modern litigation, and an accounting of these costs incurred by Obermayer is attached hereto as Exhibit H. These include:

| Type | Cost |
| --- | --- |
| Travel | $99,740.70 |
| Courier and mailing | $2,429.01 |
| Copying and imaging | $7,648.05 |
| Computerized research (Lexis and Westlaw) | $27,076.47 |
| Conference calls | $233.24 |
| **Total** | **$141,584.31** |

Exhibit 3, Ex. B. Bruce Fox explains the need for these costs in his declaration. Exhibit 3, ¶¶ 10. HKM incurred the following recoverable costs:

| Type | Cost |
| --- | --- |
| Travel | $3,653.65 |
| Courier and mailing | $650.34 |
| Copying and imaging | $25.02 |
| Computerized research (Westlaw) | $329.22 |
| **Total** | **$4,658.23** |

Exhibit 2, Ex. B. HKM also incurred costs in the amount of $3,462.50 in regard to hotel, meals, transportation, and parking costs incurred during trial and for the final pre-trial conference held in this action. Mr. Okadigbo's declaration attests to the need for these costs. Exhibit 2, ¶¶ 22, Ex. B. TrialQuest also incurred recoverable costs, which it billed to Obermayer. Those costs are outlined in

TrialQuest's invoice. Exhibit 3, Ex. A. They are:

| Type | Cost |
| --- | --- |
| Travel | $1,616.75 |
| Equipment and video sync | $659.60 |
| **Total** | **$2,276.35** |

In brief, these costs were necessary to a successful outcome to the case. The travel and research costs are high, but necessarily so because of the complexity of this matter and the many turns, as well as the specific expertise of Pittsburgh counsel. Exhibit 3, ¶10(a), (d). The case, after all, went through summary judgment not once but twice, and through appellate review on each of those grants of summary judgment, including a certification to the California Supreme Court. After those appeals, it proceeded to a jury trial. It took over seven years. Given the complexity and inordinate length of the matter, it would be shocking if significant costs, as well as fees, had not accrued.

## VII. CONCLUSION

Lawson, after an odyssey following his retaliatory termination through litigation at nearly every level of the courts that nears Homer's original in length, is finally nearing the end. He is entitled to the costs he incurred in getting justice. Equity says so. The California Legislature says so. The case law says so. He now asks for the last step: that this Court, in the interests of justice and consistent with California law, award him those costs, in the amount of $2,881,005.29.

June 10, 2025

/s/ *Bruce C. Fox*

Bruce C. Fox (*pro hac vice*)
bruce.fox@obermayer.com
D. McArdle Booker (*pro hac vice*)
mcardle.booker@obermayer.com
OBERMAYER REBMANN MAXWELL &
HIPPEL LLP
525 William Penn Place, Suite 1710
Pittsburgh, PA 15219

Tel: (412) 566-1500
Fax: (412) 281-1530

Chaka Okadigbo (CA State Bar No.224547)
cokadigbo@hkm.com
HKM EMPLOYMENT ATTORNEYS LLP
700 S. Flower Street, Suite 1067
Los Angeles, California 90017
Telephone/Facsimile: (213) 431-6209

*Attorneys for Plaintiff Wallen Lawson*